Richard J. Cooper, Esq.
Thomas S. Kessler, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for the Foreign Representative*
*of PT Garuda Indonesia (Persero) Tbk*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PT Garuda Indonesia (Persero) Tbk,[1] | Case No. 22-11274 (LGB) |
| Debtor in a Foreign Proceeding | |

**DECLARATION OF IRFAN SETIAPUTRA AS FOREIGN REPRESENTATIVE**
**IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION**
**OF A FOREIGN MAIN PROCEEDING AND FIRST DAY PLEADINGS**

I, Irfan Setiaputra, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1.      I am over the age of 18 and, if called upon, could testify to all matters set forth in this statement, except for those portions specified as being otherwise.

2.      I am the President Director & CEO of PT Garuda Indonesia (Persero) Tbk ("Garuda" or the "Debtor" or the "Company"). As set forth below, I (the "Petitioner" or the "Foreign Representative") was duly-appointed as foreign representative for the purposes of this Chapter 15 Case, which is filed by Garuda in respect of the proceeding in the Commercial Court

---

[1]      The last four identifying digits of the Indonesian tax number for the Debtor are 3000.

of Central Jakarta District Court (the "Indonesian Court") pursuant to Law No. 37 of 2004

Bankruptcy and Suspension of Debt Payment Obligation (the "PKPU Proceeding").

3.    I submit this declaration (the "Declaration") in support of (i) the *Verified Petition*

*for Recognition of Foreign Main Proceeding and Motion for Order Granting Related Relief*

*Pursuant to 11 U.S.C. §§ 1515, 1517, 1520 and 1521* (the "Verified Petition")[2] and (ii) the

*Application Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 for Order*

*Scheduling Hearing and Specifying Form and Manner of Service of Notice, and Granting*

*Related Relief* (the "Notice Procedures Motion", together with the Verified Petition, the "First

Day Pleadings").

4.    I make this declaration on the basis of documentation I have reviewed and facts

known to me through my work as President Director & CEO and foreign representative of the

Debtor. Where relevant information has been provided to me by others, the information is true

to the best of my knowledge and belief. If I were called upon to testify, I could and would testify

competently to the facts set forth herein.

## BACKGROUND

**A.    General Background and History**

   *i.    Garuda's Corporate Structure and Offices*

5.    Garuda incorporated in Indonesia in 1950 and is the national airline of Indonesia.

The company's core business is operating commercial flights. As of July 2022, there are

forty-four domestic flight routes and fourteen international routes throughout Europe, Asia, the

Middle East and Australia. Garuda also conducts aircraft maintenance and offers general travel

---

[2]    All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Verified Petition.

services, including travel agents, catering and ground handling through its non-debtor subsidiaries.



6.      Garuda's largest shareholder is the government of Indonesia. The Debtor has issued two series of registered shares: Series A (the "Special Share"), 100% of which is owned by the Indonesian government, and Series B, 60.54% of which is owned by the Indonesian government, 28.27% of which is owned by PT Trans Airways, a privately held corporation, and the remainder of which is 11.19% owned by public shareholders, with no single holder owning more than 5%. The "Special Share" gives the Indonesian government the power to, among other things, elect and dismiss directors and commissioners, approve amendments to Garuda's articles of association, approve any merger, consolidations, acquisition or spin-off, and approve any liquidation or bankruptcy of the company. Garuda's Series B stock is listed on the Indonesian Stock Exchange and publically traded.

7.      Garuda is headquartered in, and maintains its registered office at, the Garuda Indonesia Building, Jalan Kebon Sirih No. 46A, Jakarta 10110, Indonesia (the "Jakarta Office"). Garuda's operational and economic activities are concentrated in Indonesia, where the company is subject to significant Indonesian legal and regulatory regimes. Garuda also pays taxes in Indonesia.

8.      As of June 30, 2022, Garuda had approximately 4,715 employees, almost all of whom are based in and work in Indonesia.  Garuda's management center is located at its Jakarta Office, where Garuda's senior management makes decisions.  Garuda's board meetings take place in Indonesia.  Garuda's officers as of the date of this Verified Petition include (i) Irfan Setiaputra, President & CEO; (ii) Ruchyat Susardi, Director of Service & Commercial; (iii) Rahmat Hanafi, Director of Maintenance; (iv) Tumpal Manumpak Hutapea, Director of Operation; (v) Dr. Prasetio, Director of Finance and Risk Management; (vi) Salman El Farisiy, Director of Human Capital, all of whom are located in Indonesia.

9.      The Debtor has property located within the United States, specifically in New York County.  Cleary Gottlieb Steen & Hamilton LLP holds an unused retainer in the amount of approximately USD $300,000 from the Debtor in a bank account in New York, New York in connection with certain legal services retained in respect of Garuda's restructuring.  Additionally, certain of Garuda's contracts and debt obligations are governed by New York law.

**B.     Events Precipitating Commencement of the PKPU Proceedings**

10.      On March 11, 2020, the World Health Organization declared the widespread outbreak of COVID-19 a global pandemic.  In the subsequent weeks, countries around the world announced severe travel restrictions and/or outright closure of their borders.  The impact on the airline industry was almost instantaneous and has had profound, lasting effects. By April 1, 2020, the International Air Transportation Association estimated that customers living in countries with severe travel restrictions accounted for 98% of global passenger revenue, and that more than 8,500 passenger aircraft—two-thirds of the world's overall fleet—had been grounded as a result.

11.      As a result, in fiscal year 2020, Garuda served less than a third (27.01%) of the number of passengers and operated less than half (40.85%) of the capacity (measured in

4

available seat kilometers, or "ASKs") year-over-year as compared to pre-pandemic. The impact of the pandemic on Garuda's passenger business proved to be long-term: domestic travel within Indonesia remained limited through 2021, primarily due to requirements for testing and vaccination (to which only a fraction of the Indonesian population had access), and international travel was effectively grounded until the beginning of 2022, when entry and quarantine restrictions were finally relaxed.

12.    Garuda's initial response to the pandemic was to optimize its cargo and charter services in order to compensate for the decline in its passenger business and to reduce operational costs to the greatest extent possible. In addition, the Indonesian government authorized funding of an 8.5 trillion Indonesia Rupiah ("IDR" or "Rp") non-equity loan to Garuda as a Mandatory Convertible Bonds ("MCB") which was supposed to be disbursed to Garuda in several phases during 2020-2021. Garuda received IDR 1 trillion in June 2022.[3] Garuda also has conducted a consent solicitation (the "Sukuk Consent Solicitation") on Sukuk trust certificates due in 2020 totaling USD $500 million, in order to extend their maturity by three years and implement a covenant holiday until Garuda's operations return to pre-pandemic levels.

13.    As the crisis continued, it became evident that Garuda would need to right-size its operations and restructure its current capital commitments and other obligations. One year into the pandemic, Garuda announced a comprehensive restructuring scheme for implementation in the latter three quarters of 2021. Through this restructuring scheme, Garuda sought to resolve liquidity issues and ensure a going concern status by imposing a moratorium on all of its debts, minimizing its operations (including focusing on profitable routes, reducing its fleet, and

---

[3]    The remaining IDR 7.5 trillion commitment under the MCB was cancelled and cannot be withdrawn.

reducing staff), and fundraising (including divesting shares in subsidiaries in order to meet short-term liquidity needs). In the longer term, Garuda sought to reduce its outstanding debts, extend the maturity of its debt obligations, lower interest expenses to match its cash flow ability, and increase its profitability by optimizing ancillary revenue and aggressively restructuring its cost structure.

**C.**     **The PKPU Proceeding and Appointment of the Foreign Representative**

14.     On October 22, 2021, one of Garuda's creditors filed a PKPU[4] petition against Garuda to commence the PKPU Proceeding (the "PKPU Petition"). Copies of the PKPU Petition and a certified translation are attached hereto as Exhibit A. A PKPU is a court-enforced suspension of payments process which is designed to provide a debtor a definite period of time to restructure its debt and reorganize its affairs pursuant to a composition plan with its creditors. PKPU proceedings are governed by Law No. 37 of 2004 of the Indonesian Insolvency Law. The Panel of Judges of the Indonesian Court granted the PKPU Petition on December 9, 2021 and appointed Jandri Siadari, S.H., Dip.Mkt., LL.M., Martin Patrick Nagel, S.H., M.H., Albert Hasoloan Limbong, S.H., Asri, S.H., M.H., Mulyadi, S.H., LL.M., William Eduard Daniel, S.E., S.H., LL.M., MBL (the "PKPU Administrators") as administrators who, together with the Debtor, manage the Debtor's assets during the PKPU Proceeding.

15.     On June 17, 2022, Garuda proposed to creditors the PKPU Plan developed in consultation with an ad hoc group of its aircraft lessors, Sukuk Holders and a number of other creditors working to facilitate the restructuring of Garuda's debts. The PKPU Plan anticipates

---

[4]     PKPU is an abbreviation for *Penundaan Kewajiban Pembayaran Utang*, an Indonesian phrase meaning "suspension of payments and obligations."

Garuda continuing to operate in the ordinary course and provides, in summary, the following

treatment to Garuda's classes of creditors:[5]

  a. **Preferred Creditors**. The Indonesian government will receive 100% recovery on the IDR 1 trillion mandatory convertible bonds issued by Garuda pursuant to that certain Deed of Mandatory Convertible Bonds Issuance Agreement (*Akta Perjanjian Penerbitan Obligasi Wajib Konversi*) No. 28 dated 28 December 2020 in the form of new ordinary shares in Garuda. All other Preferred Creditors, including Garuda employees, will have their claims repaid in full from operational cash flow over time.

  b. **Aircraft Lessors**. Each aircraft lessor is given the option to (i) terminate their existing lease agreement and Garuda and its subsidiaries will have no further obligations under the relevant lease agreement, or (ii) if the aircraft is (a) part of Garuda's "go-forward business plan," to amend the terms of the existing lease; or (b) not part of the go-forward plan, to provide a proposal to enter into an alternative lease arrangement.

  c. **Spare Engine Lessors**. Each Spare Engine Lessor shall amend the terms of its respective exiting lease agreement pursuant to the go-forward spare engine term sheets included in the PKPU Plan.

  d. **Finance Lease Creditor**. Export Development Canada, as party to, among others, that certain aircraft leasing facility agreement, shall receive a pro rata share of the New Notes and New Equity.

  e. **Aircraft Manufacturers**. The following settlement terms apply to the different aircraft manufactures: (i) existing aircraft purchase agreements with Boeing will be cancelled in full; (ii) the Airbus purchase agreement will be amended; (iii) the exiting aircraft purchase agreement with Avions De Transport Regional G.I.E. has been cancelled in full; and (iv) each aircraft manufacturer shall receive its pro rata share of New Notes and New Equity.

  f. **MRO Vendors**. Garuda has entered into individual settlements with its maintenance, repair and/or overall service providers to ensure continued performance after the conclusion of the PKPU Proceedings.

  g. **Financing Creditors**. The Existing Loan Agreement shall be deemed amended to reflect the New Payment Terms agreed to in furtherance of the PKPU Plan and the Financing Creditors shall receive settlement of its claims in accordance with those New Payment Terms.

---

[5] All capitalized terms used but not defined herein are defined in the PKPU Plan. Both English and Bahasa copies of the PKPU Plan, which was originally prepared in English and ratified by the Indonesian Court in Bahasa, are attached hereto as Exhibit C.

h. **Sukuk Holders**. Holders of Sukuk Certificates will receive their pro rata share of New Sukuk Certificates and New Equity. All obligations under the existing Sukuk Certificates shall be deemed discharged upon the Effective Date.

i. **Trade Creditors**. Trade creditors with a claim equal to or below IDR 255,000,000 will be repaid in full from operational cash flow over time. Trade creditors with a claim greater than IDR 255,000,000 shall receive (i) in the case of onshore Other Trade Creditors, Local Debt Claims and New Equity, and (ii) in the case of offshore Other Trade Creditors, New Notes and New Equity.

16.     In total, USD $825 million will be distributed to Garuda's creditors pursuant to the PKPU Plan in the form of Local Debt Claims, New Notes, and New Sukuk Certificates, as described in paragraph 15 above. Additionally, Garuda will issue New Equity through a rights issue in the amount representing the greater of (x) the amount equal to 19% of the Equity Eligible Creditors' Settlement Claims (expressed in USD) less the amount of debt allocated to them pursuant to Article 5.10a, and (y) USD $330 million.[6]

17.     For Garuda's PKPU Plan to be accepted, it needed to be approved by a simple majority of Verified Creditors (both secured and unsecured) present in the creditors' meeting representing at least two-thirds in value of all claims held by such Verified Creditors. On June 17, 2022 the voting creditors overwhelmingly supported the PKPU Plan, with 95.07% in number of creditors which represented 97.46% in amount voting by the unsecured creditors to approve the PKPU Plan. Because there were no secured creditors in the PKPU Proceeding, the unsecured creditors' votes met the threshold to accept the PKPU Plan.

18.     On June 27, 2022, the PKPU Plan was approved by the Indonesian Court (the "PKPU Judgment"). Copies of the PKPU Judgment and a certified translation are attached hereto as Exhibit B.

---

[6]     Both the total amount to be distributed to Garuda's creditors and the amount of New Equity to be issued by Garuda are contingent on Boeing providing certain required documents and confirmations by the Post Homologation Verification Deadline.

19.     On July 4, 2022, Greylag Goose Leasing 1446 Designated Activity Company and Greylag Goose Leasing 1410 Designated Activity Company (together, the "Greylag Entities"), aircraft lessors to Garuda, each filed an appeal to the Indonesian Supreme Court in respect of the PKPU Judgment (collectively, the "Appeal"). Garuda is actively defending the Appeal and filed its counter memorandum of appeal in the Indonesian Supreme Court on July 14, 2022.

20.     On July 26, 2022, Garuda was informed that the case dossier for the Appeal had been delivered by the Indonesian Court to the Indonesian Supreme Court. On September 8, 2022, the Supreme Court announced the case register number for appeal under number 1454K/Pdt.Sus-Pailit/2022.

21.     If the Appeal is decided in Greylag's favor, the PKPU Plan will no longer be in force and Garuda may be declared bankrupt, which would result in the commencement of a liquidation process. Once the Appeal has concluded, the role of the PKPU Administrators will cease.

22.     Pending the decision of the Appeal by the Indonesian Supreme Court, the PKPU Plan remains effective but the PKPU Proceeding cannot be closed and the PKPU Administrators remain in their roles. Garuda can still take steps toward implementing the PKPU Plan. However, certain actions, such as (i) disbursement of New Money Financing and (ii) the issuance of New Notes and New Sukuk Certificates, can only be completed after the Indonesian Supreme Court decides the Appeal.

23.     Pursuant to the approval of Garuda's board (the "Board Approval"), memorialized in the Garuda Board of Directors Minutes of Meeting dated September 15, 2022 ("Board Meeting Minutes"), and as acknowledged and consented to by the PKPU Administrators, each of the Foreign Representatives has been (i) appointed to act as the foreign representative of

Garuda's PKPU Proceeding for purposes of this Chapter 15 Case, and (ii) authorized to commence this Chapter 15 Case.[7]

## RECOGNITION AS A FOREIGN MAIN PROCEEDING

24.     I believe that the PKPU Proceeding is a "foreign proceeding" as I have been advised that term is defined in Bankruptcy Code section 101(23).  To the best of my knowledge, information and belief, the PKPU Proceeding is a collective judicial proceeding, under a Indonesian law relating to insolvency or adjustment of debt in which the assets and affairs of the Debtor are subject to control or supervision by a Indonesian court, for the purposes of reorganization or liquidation.

25.     Additionally, I believe that the PKPU Proceeding is a "foreign main proceeding" as I have been advised that term is defined in Bankruptcy Code section 1502(4).  The Debtor has its center of main interests in Indonesia.  Indonesia is the site of Garuda's headquarters and its operations, as well as its primary assets and its management.  Garuda files its taxes in Indonesia, decisions made regarding its operations are made in Indonesia, and Garuda's creditors have been on notice and would expect that Garuda's center of main interest is in Indonesia.  Indonesia, where the PKPU Proceeding is pending, is therefore the center of main interests of the Debtor within the meaning ascribed in Bankruptcy Code section 1516(c).

26.     As foreign representative of the Debtor, I have directed our United States counsel, Cleary Gottlieb Steen & Hamilton LLP, to (i) commence this Chapter 15 Case for the Debtor; (ii) seek recognition of the PKPU Proceeding as a "foreign main proceeding".  All certified

---

[7]     A true and correct copy of the Board Meeting Minutes authorizing the commencement of the Chapter 15 Case and appointing the Foreign Representative is attached hereto as Exhibit D.

documents, statements, lists and documents required under chapter 15 of the Bankruptcy Code and the Bankruptcy Rules have been filed contemporaneously herewith.

## **NO PENDING U.S. BANKRUPTCY CASES FILED BY THE DEBTOR**

27.     The Debtor does not have a pending petition with the Bankruptcy Court for relief under chapter 15 other than the Verified Petition, or any other chapter of title 11 of the United States Code.

## **NO OTHER PENDING FOREIGN PROCEEDINGS OR**
## **PERSONS AUTHORIZED TO ADMINISTER FOREIGN PROCEEDINGS**

28.     I am not aware of any pending foreign proceeding, as that term is defined in section 101(23) of the Bankruptcy Code, other than the Indonesian Proceeding, nor any persons, other than myself, Prasetio,[8] and Assegaf Hamzah & Partners, as Indonesian Counsel, authorized to administer any pending foreign proceeding of the Debtor.

## **PARTIES TO LITIGATION IN THE UNITED STATES**

29.     Garuda is not party to any litigation in the United States that either is pending or for which the period for further appeal has not run as of the date of the commencement of the Chapter 15 Case.

## **ENTITIES AGAINST WHOM PROVISIONAL**
## **RELIEF IS SOUGHT UNDER SECTION 1519**

30.     The Debtor is not currently seeking provisional relief, but reserves the right to do so should circumstances require.

---

[8]     The Board Approval also includes the appointment of Prasetio as a Foreign Representative of Garuda's PKPU Proceeding for the purposes of this Chapter 15 Case.

## CORPORATE OWNERSHIP STATEMENT
## PURSUANT TO BANKRUPTCY RULES 1007(a)(4) and 7007.1

31.    Pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure, PT Garuda Indonesia (Persero) Tbk, by and through its undersigned counsel, hereby discloses all corporations that directly or indirectly owns 10% or more of any class of the Debtor's equity interests:

- 100% of Garuda's "Series A" equity is owned by the Indonesian government.

- 60.54% of Garuda's "Series B" equity is owned by the Indonesian government.

- 28.27% of Garuda's "Series B" equity is owned by PT Trans Airways, a privately held company.

Executed at Jakarta, Indonesia
on September 20, 2022

Irfan Setiaputra, as Foreign Representative
of PT Garuda Indonesia (Persero) Tbk

12