# EXHIBIT 1

**IN THE SUPREME COURT OF NEW SOUTH WALES** **No.** **243923of 2022**
**EQUITY DIVISION**
**SYDNEY REGISTRY**
**CORPORATIONS LIST**

**IN THE MATTER OF P.T. GARUDA INDONESIA LTD**
**ARBN: 000 861 165**

**GREYLAG GOOSE LEASING 1410 DESIGNATED ACTIVITY COMPANY**
First plaintiff

**GREYLAG GOOSE LEASING 1446 DESIGNATED ACTIVITY COMPANY**
Second plaintiff

This document was eFiled on 15 Aug 2022 . Final acceptance has been given.

CDDAett

Principal Registrar &
Chief Executive Officer

THE SEAL OF THE SUPREME COURT OF NEW SOUTH WALES

**P.T. GARUDA INDONESIA LTD**
**ARBN 000 861 165**
Defendant

**Originating process**

## A. DETAILS OF APPLICATION

This application is made under sections 583(c)(i), 583(c)(ii) and/or 585 and Part 5.7 of the *Corporations Act 2001* (Cth) (**Corporations Act**) and/or sections 459A and/or 459P and Chapter 5 of the Corporations Act.

The application is to wind up the defendant, as a Part 5.7 body, on the basis that it is unable to pay its debts or otherwise that it is just and equitable to do so.

On the facts stated in the supporting affidavit, the plaintiffs, Greylag Goose Leasing 1410 Designated Activity Company and Greylag Goose Leasing 1446 Designated Activity Company, claim the following relief:

1. An order that the defendant be wound up pursuant to sections 583(c)(i) or 583(c)(ii) of the Corporations Act.

2. An order that a liquidator be appointed to the defendant.

| | |
|---|---|
| Filed on behalf of (name & role of party) | Greylag Goose Leasing 1410 Designated Activity Company and Greylag Goose Leasing 1446 Designated Activity Company, plaintiffs |
| Prepared by (name of person/lawyer) | Cameron Adair |
| Law firm (if applicable) | K&L Gates |
| Tel | +61 2 9513 2556 Fax +61 2 9513 2399 |
| Email | cameron.adair@klgates.com/jason.opperman@klg aes.com |
| **Address for service** (include state and postcode) | Level 31, 1 O'Connell Street, Sydney NSW 2000 |

3. An order that plaintiffs' costs of this application be paid out of the assets of the defendant on an indemnity basis.

4. Such further or other orders as this Court deems appropriate.

Date: 15 August 2022

.........................................

Signature of plaintiffs' legal practitioner
by his employed solicitor, Cameron Adair

Name of Legal practitioner: Jason Opperman
PCN: 23210
Firm name: K&L Gates

This application will be heard by the Supreme Court of New South Wales at Law Courts Building, Queens Square, Sydney NSW 2000 at ........... *am/*pm on 21 Sept 2022..............

**B. NOTICE TO DEFENDANT**

TO: P.T. Garuda Indonesia Ltd
Level 3, Suite 110, 1 Departure Plaza,
Sydney International Airport
Mascot NSW 2020

If you or your legal practitioner do not appear before the Court at the time shown above, the application may be dealt with, and an order made, in your absence. As soon after that time as the business of the Court will allow, any of the following may happen:

(a) the application may be heard and final relief given,

(b) directions may be given for the future conduct of the proceeding,

(c) any interlocutory application may be heard.

Before appearing before the Court, you must file a notice of appearance, in the prescribed form, in the Registry and serve a copy of it on the plaintiffs.

**Note.**

Unless the Court otherwise orders, a defendant that is a corporation must be represented at a hearing by a legal practitioner. It may be represented at a hearing by a director of the corporation only if the Court grants leave.

**C. APPLICATION FOR WINDING UP ON GROUND OF INSOLVENCY**

1. The plaintiffs rely on failure by the defendant to comply with demands under section 585(a) of the Corporations Act. A copy of the demands, marked A and B, are attached to this originating process.

2. The demands were served by Cameron Adair who delivered them to the registered office in Australia of the defendant at Level 3, Suite 110, 1 Departure Plaza, Sydney International Airport, Mascot NSW 2020 on 15 June 2022.

3. The defendant failed to pay the total of the debts demanded or to secure or compound for that total to the satisfaction of the plaintiffs for 3 weeks after the demands were served on the defendant.

**D. FILING**

Date of filing:

This originating process is filed by Jason Opperman of K&L Gates for the plaintiffs.

**E. SERVICE**

The plaintiffs' address for service is:

c/- K&L Gates
Level 31, 1 O'Connell Street
Sydney NSW 2000

It is intended to serve a copy of this originating process on the defendant.

"A"



K&L GATES

15 June 2022

Partner: Jason Opperman
jason.opperman@klgates.com
T +61 2 9513 2435

Contact: Cameron Adair
cameron.adair@klgates.com
T +61 2 9513 2556

Our ref: adairc.oppermj

**Private and confidential**

P.T. Garuda Indonesia Ltd
Level 3, Suite 110, 1 Departure Plaza,
Sydney International Airport
Mascot NSW 2020

**Attention: Dony Widojoko, Local Agent**

Dear Mr Widojoko

**Greylag Goose Leasing 1410 Designated Activity Company; P.T. Garuda Indonesia Ltd**

We act for Greylag Goose Leasing 1410 Designated Activity Company.

**Enclosed**, by way of service, is a Creditor's Demand for Payment of Debt.

If you would like to discuss the matter, please contact us.

Yours faithfully

K+L Gates

**K&L Gates**

**Encl.**

## *Corporations Act 2001* (Cth), section 585(a)

## CREDITOR'S DEMAND FOR PAYMENT OF DEBT

To: P.T. Garuda Indonesia Ltd of Level 3, Suite 110, 1 Departure Plaza, Sydney International Airport, Mascot NSW 2020, ARBN 000 861 165 (the "**company**")

1. The company owes Greylag Goose Leasing 1410 Designated Activity Company of Rocktwist House, Block 1, Western Business Park, Shannon, Co. Clare, Ireland (the "**creditor**"), the amount of USD193,003,254.55, being the total of the debts described in the Schedule (the "**debts**").

2. The debts in the Schedule, either jointly or severally, exceed the statutory minimum of AUD4,000.00 and are due and payable by the company to the creditor.

3. The creditor hereby demands that the company pay the debts so due to the creditor.

4. If the company has not paid the debts within three (3) weeks after service of this demand, the creditor may rely on the failure to pay the debts (jointly or severally) pursuant to section 585(a) of the *Corporations Act 2001* (Cth) as grounds for an application to a court having jurisdiction under section 583(c)(i) of the *Corporations Act 2001* (Cth) for winding up the company on the basis that the company is taken to be unable to pay its debts.

5. The address of the creditor for the purpose of making payment of the debts demanded herein and for service of documents in relation to this demand is: c/- K&L Gates, Level 31, 1 O'Connell Street, Sydney NSW 2000, Australia, for the attention of Jason Opperman, Partner.

**SCHEDULE**

| Description of the debt | Amount of the debt (US Dollars) |
|---|---|
| In respect of Airbus A330-200 aircraft with manufacturer's serial number 1410 (the "**Aircraft**"), the creditor refers to the following contractual documents:<br><br>1. Aircraft Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**ALA**"), which incorporates the terms and conditions of the Aircraft | |

| | |
|---|---|
| Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Lease Shared Terms**", together with the ALA, the "**Lease Agreement**"), between the creditor and Garuda Indonesia Holiday France S.A.S. (the "**Lessee**");<br><br>2. Aircraft Sub-Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sublease ALA**"), which incorporates the terms and conditions of the Aircraft Sub-Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sub-Lease Shared Terms**", together with the Sublease ALA, the "**Sub-Lease Agreement**"), between the Lessee and the company;<br><br>3. Security Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Security Agreement**") between the creditor and the Lessee; and<br><br>4. Sublease Subordination Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Sublease Subordination Agreement"**), between the creditor, Lessee, and the company.<br><br>The company has defaulted under the Sub-Lease Agreement as detailed in the **attached** Event of Default letters to the company dated 27 January 2020, 13 February 2020, 27 April 2020 and 7 June 2022 and the Enforcement Notice to the company dated 4 January 2022.<br><br>By reason of the defaults, the creditor is entitled to enforce the security granted to it under the Security Agreement and pursuant to the Sublease Subordination Agreement, and the creditor is entitled to demand payment from the company for each of the following debts which are due and owing to the creditor: | |
| a) Total Loss Value | 119,730,172.50 |
| b) Relocation / Ferry Cost | 150,000.00 |
| c) Outstanding Rent as of 9 December 2021 | 16,729,534.68 |

| | |
|---|---|
| d) Outstanding Maintenance Reserves as of 9 December 2021 | 1,096,073.86 |
| e) Default Interest from 1 May 2021 to 9 December 2021 | 1,448,315.16 |
| f) Engine PR Maintenance Exposure | 7,528,655.43 |
| g) Future Rent | 34,663,282.57 |
| h) Future Supplemental Rent (Airframe, Engine LLP, LG & APU) | 3,350,632.13 |
| i) Future Supplemental Rent (Engine PR) | 7,704,778.97 |
| j) Expenses and Legal Fees | 601,809.25 |
| **Total** | **193,003,254.55** |

Dated: 15 JUNE 2022

Signed:

Print name: Jason Opperman

Capacity: Creditor's solicitor, on behalf of the creditor

TRUEAERO

**TRUEAERO ASSET MANAGEMENT IRELAND LIMITED**
**25-28 NORTH WALL QUAY**
**Dublin 1**
**Ireland**

January 27, 2020

**Garuda Indonesia Holiday France S.A.S.**
255, rue Saint-Honoré
75001 Paris
France
Attention: President, GIH France S.A.S.

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Acquisition & Aircraft Management

**PT Garuda Indonesia (Persero) Tbk**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Corporate Legal & Compliance

**Re:** **Notice of Event of Default**

Airbus A330-200 Aircraft bearing MSN 1410 and equipped with two (2) Trent 772B engines with engine serial numbers 42230 and 42202 (the "***Aircraft***")

Dear Sirs,

Reference is made to the Aircraft Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Agreement***"), between

Greylag Goose Leasing 1410 Designated Activity Company ("***Lessor***") and Garuda Indonesia Holiday France S.A.S. ("***Lessee***") which incorporates the terms and conditions of the Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Shared Terms***"), between the Lessee and Aircastle Advisor (Ireland) Limited. The undersigned, TrueAero Asset Management Ireland Limited, is the Servicer under the Lease Agreement. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Lease Agreement.

On behalf of Lessor, we hereby formally notify you that certain Defaults and Events of Default have occurred and are continuing under the Lease Agreement, including, but not limited to, Lessee's failure to make payments of Rent—Periodic Amount and Maintenance Amounts when due under the Lease Agreement as set forth on Schedule A. Such payments have not been received by Lessor and such non-payment constitutes an Event of Default under Section 12 of the Lease Shared Terms.

We hereby demand on behalf of Lessor that you pay all past-due amounts.

Finally, we remind you that Section 13.1.4 of the Lease Shared Terms provides that Lessor has the right to recover from Lessee all damages, losses and costs of collection sustained directly or indirectly as a result of an Event of Default.

This notice is without prejudice to any Defaults or Events of Default that may exist or may hereafter occur under the Lease Agreement and we hereby reserve on behalf of Lessor all of its respective rights and remedies with respect to any and all such Events of Default. Any delay or forbearance by Lessor in the enforcement or pursuit of any of its rights and remedies under the Lease Agreement or under applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of Lessor's rights or remedies at a later date and all of such rights and remedies are expressly reserved.

Very truly yours,

TrueAero Asset Management Ireland Limited, as Servicer

By: Henry Barrett

# SCHEDULE A

## Outstanding Receivables

| MSN | Invoice: Name | Amount Due | Date Payment Due | Days Outstanding | Balance Due |
|---|---|---|---|---|---|
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-RI--000674 | $ 865,870.00 | 10/30/2019 | 84 | $ 865,870.00 |
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-UI--000700 | $ 181,744.48 | 11/15/2019 | 68 | $ 181,744.48 |
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-RI--000662 | $ 865,870.00 | 11/30/2019 | 53 | $ 865,870.00 |
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-UI--000730 | $ 189,332.48 | 12/15/2019 | 38 | $ 189,332.48 |
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-RI--000718 | $ 865,870.00 | 12/30/2019 | 23 | $ 865,870.00 |
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2020-UI--000870 | $ 158,539.40 | 1/15/2020 | 7 | $ 158,539.40 |
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-RI--000765 | $ 865,870.00 | 1/30/2020 | 0 | $ - |
| 1410 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2020-RI--000851 | $ 865,870.00 | 3/1/2020 | 0 | $ - |
| Total Outstanding for MSN 1410 | | | | | $ 3,127,226.36 |

TRUEAERO

February 13, 2020

**Garuda Indonesia Holiday France S.A.S.**
255, rue Saint-Honoré
75001 Paris
France
Attention: President, GIH France S.A.S.

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Acquisition & Aircraft Management

**PT Garuda Indonesia (Persero) Tbk**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Corporate Legal & Compliance

Re: **Second Notice of Event of Default**

Airbus A330-200 Aircraft bearing MSN 1410 and equipped with two (2) Trent 772B engines with engine serial numbers 42230 and 42202 (the "***Aircraft***")

Dear Sirs,

Reference is made to the Aircraft Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Agreement***"), between Greylag Goose Leasing 1410 Designated Activity Company ("***Lessor***") and Garuda Indonesia Holiday France S.A.S. ("***Lessee***") which incorporates the terms and conditions of the Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Shared Terms***"), between the Lessee and Aircastle Advisor (Ireland) Limited. The undersigned, TrueAero Asset Management Ireland Limited, is the Servicer under

the Lease Agreement. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Lease Agreement.

As you know, for many months, Defaults and Events of Default have occurred and have been continuing under the Lease Agreement, including, but not limited to, Lessee's failure to make payments of Rent—Periodic Amount and Maintenance Amounts. We formally notified you of those Defaults and Events of Default pursuant to our Notice of Event of Default dated January 27, 2020.

In the spirit of cooperation, we have attempted to develop a payment plan with you. You have, however, failed to collaborate in developing such payment plan.

We hereby reiterate our demand on behalf of Lessor that you immediately pay all past-due amounts, along with default interest on such past-due amounts at the Past Due Rate, as set forth on Schedule A.

It is imperative that we see meaningful progress to cure this substantial delinquency. Otherwise, we will have no choice but to seriously consider commencing the exercise of remedies under Section 13 of the Lease Shared Terms, including issuing a grounding notice and ultimately demanding return of the Aircraft.

We remind you that 13.1.4 of the Lease Shared Terms provides that Lessor has the right to recover from Lessee all damages, losses and costs of collection sustained directly or indirectly as a result of an Event of Default.

This notice is without prejudice to any Defaults or Events of Default that may exist or may hereafter occur under the Lease Agreement and we hereby reserve on behalf of Lessor all of its respective rights and remedies with respect to any and all such Events of Default. Any delay or forbearance by Lessor in the enforcement or pursuit of any of its rights and remedies under the Lease Agreement or under applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of Lessor's rights or remedies at a later date and all of such rights and remedies are expressly reserved.

Very truly yours,

TrueAero Asset Management Ireland Limited, as Servicer

By: Henry Barrett

HENRY BARRETT

DIRECTOR

# SCHEDULE A

## Outstanding Receivables

| MSN | Invoice Type | Invoice Name | Amount Due | Date Payment Due | Days Outstanding | Balance Due |
|---|---|---|---|---|---|---|
| 1410 | Rent | 2019-RI--000674 | $ 865,870.00 | 30-Oct-19 | 105 | $ 865,870.00 |
| 1410 | Utilization | 2019-UI--000700 | $ 181,744.48 | 15-Nov-19 | 89 | $ 181,744.48 |
| 1410 | Rent | 2019-RI--000662 | $ 865,870.00 | 30-Nov-19 | 74 | $ 865,870.00 |
| 1410 | Utilization | 2019-UI--000730 | $ 189,332.48 | 15-Dec-19 | 59 | $ 189,332.48 |
| 1410 | Rent | 2019-RI--000718 | $ 865,870.00 | 30-Dec-19 | 44 | $ 865,870.00 |
| 1410 | Utilization | 2020-UI--000870 | $ 158,539.40 | 15-Jan-20 | 28 | $ 158,539.40 |
| 1410 | Rent | 2019-RI--000765 | $ 865,870.00 | 30-Jan-20 | 13 | $ 865,870.00 |
| 1410 | Rent | 2020-RI--000851 | $ 865,870.00 | 01-Mar-20 | 0 | $ - |
| 1410 | Default Interest - Rent | TBD (Sept 2019 - Jan 2020) | $ 54,874.51 | | | $ 54,874.51 |
| 1410 | Default Interest - Utilization | TBD (Sept 2019 - Jan 2020) | $ 8,557.15 | | | $ 8,557.15 |
| Total Outstanding for MSN 1410 | | | | | | $ 4,056,528.03 |

TRUEAERO

**Garuda Indonesia Holiday France S.A.S.**
255, rue Saint-Honoré
75001 Paris
France
Attention: President, GIH France S.A.S.

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Acquisition & Aircraft Management

**PT Garuda Indonesia (Persero) Tbk**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Corporate Legal & Compliance

**Wilmington Trust Company**
1100 North Market Street
Wilmington, DE 19890
Attention: Corporate Trust Administration/Liz Hinojosa

April 27, 2020

Re: **Notice of L/C Drawdown and Security Deposit Application**

Airbus A330-200 Aircraft bearing MSN 1410 and equipped with two (2) Trent 772B engines with engine serial numbers 42230 and 42202 (the "***Aircraft***")

Dear Sirs and Madams,

Reference is made to the (i) Aircraft Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Agreement***"), between Greylag Goose Leasing 1410 DAC ("***Lessor***") and Garuda Indonesia Holiday France S.A.S. ("***Lessee***") which incorporates the terms and conditions of the Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease***

***Shared Terms***"), between the Lessee and Aircastle Advisor (Ireland) Limited, (ii) Notice of Event of Default, dated January 27, 2020 (the "***First Notice of Default***"), from us to you and (iii) Second Notice of Event of Default, dated February 13, 2020 (the "***Second Notice of Default***"), from us to you. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Lease Agreement.

As identified in both the First Notice of Default and the Second Notice of Default, for many months, Defaults and Events of Default have occurred and have been continuing under the Lease Agreement, including, but not limited to, Lessee's failure to make payments of Rent—Periodic Amount and Maintenance Amounts.

Due to the Events of Default continuing under the Lease Agreement, the Lessor has (i) pursuant to Section 5.2 of the Lease Agreement, drawn upon the full amount of the Letter of Credit, being US$1,500,000, on April 22, 2020 and (ii) pursuant to Section 13.1.3 of the Lease Shared Terms, applied to the partial satisfaction of the Secured Obligations the full amount of the Commitment Fee, being US$1,950,000.00, on March 31, 2020.

Nothing in this notice shall constitute a waiver of any and all present and future rights, powers, privileges and remedies available to the Lessor under the Lease Agreement, the other Operative Documents and in law, more generally, in connection with or arising from Events of Default, whether or not outstanding at the date of this notice, including, but not limited to, the right to:

(a) ground the Aircraft and ensure that the Aircraft is not brought into service or flight of any kind until further notice by the Lessor;

(b) terminate the leasing of the Aircraft under the Lease Agreement;

(c) retake possession of the Aircraft; and/or

(d) deregister the Aircraft,

and without limitation of the foregoing, we hereby notify you that the Lessor is entitled to immediately exercise such rights during such period as any Events of Default are continuing.

Nothing in this notice shall constitute a waiver of the Lessor's right to make further and other demands and request upon the Lessee in respect of any indebtedness or liability (now or hereafter due and whether actual or contingent) not incorporated in this notice (including without limitation any default interest or other costs).

Nothing in this notice shall constitute a waiver of any Event of Default and nothing in this notice shall prejudice or affect the Lessor's present or future rights and remedies under law and under the Operative Documents.

We remind you that Section 13.1.4 of the Lease Shared Terms provides that the Lessor has the right to recover from Lessee all damages, losses and costs of collection sustained directly or indirectly as a result of an Event of Default.

***

Very truly yours,

**TrueAero Asset Management Ireland Limited**, as servicer

By: Henry Barrett
Name: HENRY BARRETT
Title: DIRECTOR

HISWARA BUNJAMIN & TANDJUNG

IN ASSOCIATION WITH HERBERT SMITH FREEHILLS

18th floor, Tower I, Sudirman 7.8
Jl. Jendral Sudirman Kav. 7 – 8
Jakarta - 10220, Indonesia

T +62 21 3973 8000
F +62 21 3973 6110
hbtlaw.com

Ref No.: 15/06/22

Kepada/ *To*: **Garuda Indonesia Holiday France S.A.S. ("Penyewa / *the Lessee*")**
255, rue Saint-Honoré
75001 Paris
France
**Untuk perhatian / *Attention* : President, GIH France S.A.S**

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Untuk perhatian / *Attention*: VP Acquisition & Aircraft Management**

**PT Garuda Indonesia (Persero) Tbk ("Penyewa Lanjutan / the Sublessee")**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Untuk perhatian / *Attention*: VP Corporate Legal & Compliance**

Tanggal/ *Date*: 7 Juni / *June* 2022

***Melalui email dan pos***

**PEMBERITAHUAN INI AGAR MENJADI PERHATIAN SEGERA**

**Perihal: Satu (1) buah pesawat terbang Airbus A330-200 dengan nomor seri pabrikan 1410 ("Pesawat Terbang")**

1. Kami merujuk kepada dokumen-dokumen berikut ini:

   a. Perjanjian Sewa Pesawat Terbang (MSN 1410), tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**ALA**"), yang memasukkan syarat dan ketentuan dari Ketentuan Bersama Sewa Pesawat

***By email and by post***

**THIS NOTICE REQUIRES YOUR IMMEDIATE ATTENTION**

**Re: One (1) Airbus A330-200 aircraft with manufacturer's serial number 1410 (the "Aircraft")**

1. We refer to the following documents:

   a. Aircraft Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**ALA**"), which incorporates the terms and conditions of the Aircraft Lease Shared Terms, dated

| | | | |
|---|---|---|---|
| | Terbang, tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Ketentuan Bersama Sewa**", secara bersama dengan ALA, "**Perjanjian Sewa**"), antara Greylag Goose Leasing 1410 Designated Activity Company ("**Pemberi Sewa**") dan Penyewa; | | as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Lease Shared Terms**", together with the ALA, the "**Lease Agreement**"), between Greylag Goose Leasing 1410 Designated Activity Company ("**Lessor**") and the Lessee; |
| b. | Perjanjian Sewa Lanjutan Pesawat Terbang (MSN 1410), tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**ALA Sewa Lanjutan**"), yang memasukkan syarat dan ketentuan dari Ketentuan Bersama Sewa Lanjutan Pesawat Terbang, tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Ketentuan Bersama Sewa Lanjutan**", secara bersama dengan ALA Sewa Lanjutan, "**Perjanjian Sewa Lanjutan**"), antara Penyewa dan Penyewa Lanjutan; | b. | Aircraft Sub-Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sublease ALA**"), which incorporates the terms and conditions of the Aircraft Sub-Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sub-Lease Shared Terms**", together with the Sublease ALA, the "**Sub-Lease Agreement**"), between the Lessee and the Sublessee; |
| c. | Perjanjian Jaminan, tertanggal sejak 27 September 2019 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Perjanjian Jaminan**") antara Pemberi Sewa dan Penyewa; dan | c. | Security Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Security Agreement**") between the Lessor and the Lessee; and |
| d. | Perjanjian Subordinasi Sewa Lanjutan, tertanggal sejak 27 September 2019 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Perjanjian** | d. | Sublease Subordination Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Sublease** |

**Subordinasi Sewa Lanjutan**"), antara Pemberi Sewa, Penyewa, dan Penyewa Lanjutan.

**Subordination Agreement**"), between the Lessor, Lessee, and Sublessee.

2. Kata-kata dan ungkapan-ungkapan yang didefinisikan dalam Perjanjian Sewa (termasuk melalui rujukan kepada dokumen lain) memiliki arti yang sama dalam pemberitahuan ini, kecuali diungkapkan sebaliknya.

2. Words and expressions defined in the Lease Agreement (including by reference to another document) shall bear the same meanings in this notice unless expressed to the contrary.

**Pelanggaran terhadap kewajiban-kewajiban berdasarkan Perjanjian Sewa**

**Breach of the obligations under the Lease Agreement**

3. Pemberi Sewa telah diberitahukan pada tanggal 31 Mei 2022 bahwa Suku Cadang Pesawat Terbang telah dipindahkan tanpa persetujuannya dan Pesawat Terbang saat itu digunakan untuk keperluan penyediaan suku cadang untuk pesawat terbang lain yang sedang dioperasikan oleh Penyewa Lanjutan ("**Pemindahan Suku Cadang**"), yang melanggar klausul 8.1 (*Tidak Ada Pemindahan Kepemilikan*) dari Ketentuan Bersama Sewa yang menetapkan bahwa Penyewa tidak akan, dan akan mengupayakan bahwa Penyewa Lanjutan tidak akan, tanpa persetujuan tertulis sebelumnya dari Pemberi Sewa, menyerahkan, memindahkan atau melepaskan kepemilikan Pesawat Terbang, Kerangka Pesawat atau Mesin atau setiap Suku Cadang, kecuali apabila sesuai dengan klausul 8 (*Kepemilikan*) dari Ketentuan Bersama Sewa.

3. The Lessor was informed on 31 May 2022 that Parts of the Aircraft have been removed without its consent and the Aircraft was being used for the purpose of providing spare parts for other aircraft being operated by the Sublessee ("**Removal of Parts**"), which is in breach of clause 8.1 (*No Transfer of Possession*) of the Lease Shared Terms which specifies that Lessee will not, and will procure that Sublessee will not, without the prior written consent of Lessor deliver, transfer or relinquish possession of the Aircraft, Airframe or an Engine or any Part unless it is in accordance with clause 8 (*Possession*) of the Lease Shared Terms.

4. Oleh karenanya, Pemindahan Suku Cadang merupakan suatu Peristiwa Cedera Janji berdasarkan klausul 12.2(6) dari Ketentuan Bersama Sewa.

4. Accordingly, the Removal of Parts constitute an Event of Default pursuant to clause 12.2(6) of the Lease Shared Terms.

5. Pemberi Sewa dengan ini meminta bahwa: (a) informasi terperinci dan/atau dokumen-dokumen yang diberikan segera kepada Pemberi Sewa sehubungan dengan Pemindahan Suku Cadang, termasuk mengidentifikasi Suku Cadang yang telah dipindahkan dan lokasi Suku Cadang yang dipindahkan, dan (b) tidak ada Suku Cadang selanjutnya yang dipindahkan dari Pesawat Terbang tanpa persetujuannya.

5. The Lessor hereby requests that: (a) detailed information and/or documents provided to the Lessor promptly in connection with the Removal of Parts, including identifying the Parts that have been removed and the location of the removed Parts, and (b) no further Parts be removed from the Aircraft without its consent.

6. Berdasarkan paragraf 1.6 (*Pemeriksaan*), lampiran 2 (*Hal-hal Operasional* dari Ketentuan Bersama Sewa, Pemberi Sewa berhak untuk memeriksa Pesawat Terbang, atas biaya Penyewa setelah terjadinya Peristiwa Cedera Janji. Pemberi Sewa dengan ini meminta Penyewa dan Penyewa Lanjutan untuk mengambil tindakan yang diperlukan tersebut untuk memfasilitasi pemeriksaan yang dilakukan Pemberi Sewa dalam waktu 3 hari kalender berikutnya.

6. Pursuant to paragraph 1.6 (*Inspection*), schedule 2 (*Operational Matters*) of the Lease Shared Terms, the Lessor is entitled to inspect the Aircraft, at Lessee's expense following an Event of Default. The Lessor hereby requests the Lessee and the Sublessee to take such necessary action to facilitate Lessor's inspection in the next 3 calendar days.

**Pencadangan hak**

**Reservation of rights**

7. Pemberitahuan ini tidak dimaksudkan agar bersifat menyeluruh dan mungkin terdapat Peristiwa Cedera Janji lain yang telah terjadi dan/atau tengah berlangsung yang tidak disebutkan dalam pemberitahuan ini dan/atau yang tidak diketahui oleh Pemberi Sewa.

7. This Notice is not intended to be exhaustive and there may be other Events of Default which have occurred and/or are continuing which are not specified in this notice and/or of which Lessor is unaware.

8. Pemberi Sewa mencadangkan hak-hak yang dimilikinya untuk mengajukan klaim dari Penyewa dan/atau Penyewa Lanjutan semua pengeluaran, kerugian, tagihan dan ganti rugi (termasuk namun tidak terbatas, setiap biaya yang timbul dari penggantian Suku Cadang

8. Lessor reserves its rights to claim from Lessee and/or Sublessee all expenses, losses, claims and damages (including, without limitation, any costs incurring replacement Parts for the removed Parts and any losses in the value of the Aircraft as a result of such

untuk Suku Cadang yang dipindahkan dan setiap kerugian terhadap nilai Pesawat Terbang sebagai akibat dari Pemindahan Suku Cadang tersebut) yang disebabkan oleh terjadinya dan berlangsungnya Peristiwa Cedera Janji berdasarkan Perjanjian Sewa, Perjanjian Sewa Lanjutan, Perjanjian Jaminan dan Perjanjian Subordinasi Sewa Lanjutan.

Removal of Parts) resulting from the occurrence and continuance of the Events of Default under the Lease Agreement, the Sub-Lease Agreement, the Security Agreement and the Sublease Subordination Agreement.

9. Pemberitahuan ini (dan pelaksanaan hak-hak Pemberi Sewa sebagaimana diatur dalam Pemberitahuan ini) tidak mengurangi:

(a) setiap Peristiwa Cedera Janji atau cedera janji lain (bagaimanapun diuraikan) berdasarkan Perjanjian Sewa atau berdasarkan setiap Dokumen Operasi dan Perjanjian Subordinasi Sewa Lanjutan lain (baik yang terjadi sebelum, pada atau setelah tanggal Pemberitahuan ini);

(b) setiap hak atau upaya pemulihan yang dimiliki oleh Pemberi Sewa berdasarkan Perjanjian Sewa, berdasarkan setiap Dokumen Operasi, Perjanjian Subordinasi Sewa Lanjutan lain dan/atau berdasarkan hukum yang berlaku atau lainnya, dan Pemberi Sewa dapat atas opsinya melaksanakan setiap hak atau upaya pemulihan tersebut sewaktu-waktu; dan

(c) kewajiban yang berkelanjutan yang dimiliki Penyewa (a) sebagai penyewa berdasarkan Perjanjian Sewa

9. This Notice (and the exercise of Lessor's rights as set out herein) is without prejudice to:

(a) any other Event of Default or other default (howsoever described) under the Lease Agreement or under any other Operative Documents and Sublease Subordination Agreement (whether occurring before, on or after the date of this Notice);

(b) any of Lessor's rights or remedies under the Lease Agreement, under any other Operative Documents, Sublease Subordination Agreement and/or under applicable law or otherwise, and Lessor may at its option exercise any such rights or remedies at any time; and

(c) the continuing obligations of Lessee (a) as lessee under the Lease Agreement and the other Operative Documents

| | | | |
|---|---|---|---|
| | dan Dokumen Operasi lain dan Perjanjian Subordinasi Sewa Lanjutan (b) sebagai pemberi sewa berdasarkan Perjanjian Sewa Lanjutan. | | and Sublease Subordination Agreement and (b) as lessor under the Sub-Lease Agreement. |
| 10. | Pemberi Sewa mencadangkan semua hak dan upaya pemulihan yang dimilikinya berdasarkan Perjanjian Sewa, Perjanjian Sewa Lanjutan, berdasarkan setiap Dokumen Operasi dan Perjanjian Subordinasi Sewa Lanjutan lain dan/atau berdasarkan hukum yang berlaku (termasuk, namun tidak terbatas pada, hak untuk mengakhiri sewa guna usaha atas Pesawat Terbang, hak untuk mengambil alih kepemilikan Pesawat Terbang, hak untuk meminta penyerahan kembali Pesawat Terbang, hak atas penggantian kerugian untuk Kerugian dan untuk setiap jumlah yang terutang dan harus dibayar berdasarkan atau sehubungan dengan Perjanjian Sewa, Perjanjian Sewa Lanjutan atau setiap Dokumen Operasi dan Perjanjian Subordinasi Sewa Lanjutan lain dan/atau hak untuk menuntut ganti rugi atas pelanggaran dan/atau ganti rugi yang timbul dari pengakhiran). | 10. | Lessor reserves all of its rights and remedies under the Lease Agreement, the Sub-Lease Agreement, under any other Operative Documents and Sublease Subordination Agreement and/or under applicable law (including, without limitation, the right to terminate the leasing of the Aircraft, the right to repossess the Aircraft, the right to require re-delivery of the Aircraft, the right to indemnification for Losses and for any amounts due and payable under or in connection with the Lease Agreement, the Sub-Lease Agreement or any other Operative Documents and Sublease Subordination Agreement and/or the right to claim damages for breach and/or damages arising from any termination). |
| 11. | Setiap keterlambatan (baik di masa lalu, pada saat ini atau di masa mendatang) dalam melaksanakan atau tidak dilaksanakannya setiap hak dan upaya pemulihan oleh Pemberi Sewa bukan merupakan pengesampingan atas hak dan upaya pemulihan tersebut. | 11. | Any delay (whether past, present or future) in the exercise or any non-exercise of any of those rights and remedies by Lessor shall not constitute a waiver of the same. |
| 12. | Semua hak yang dimiliki Pemberi Sewa berdasarkan Sewa dan Dokumen Operasi lain akan tetap berlaku dan memiliki kekuatan penuh. Tidak ada tindakan yang | 12. | All of Lessor's rights under the Lease and the other Operative Documents remain in full force and effect. No action taken or not taken by Lessor is intended as, and shall |

diambil atau tidak diambil oleh Pemberi Sewa yang dimaksudkan sebagai, dan tidak boleh ditafsirkan sebagai, pengesampingan, persetujuan atau perubahan atas Perjanjian Sewa atau Perjanjian Sewa Lanjutan.

not be construed as, a waiver, consent or amendment to the Lease Agreement or the Sub-Lease Agreement.

**Hukum yang mengatur**

13. Pemberitahuan Pelaksanaan ini dalam semua hal, termasuk semua permasalahan mengenai penafsiran, keabsahan dan pelaksanaan, akan diatur oleh dan ditafsirkan dan dilaksanakan sesuai dengan hukum dalam negeri negara bagian New York.

**Governing law**

13. This Enforcement Notice will in all respects, including all matters of construction, validity and performance, be governed by and construed and enforced in accordance with the internal laws of the state of New York.

**Bahasa yang mengatur**

14. Surat ini dibuat dalam versi dua (2) bahasa yakni, bahasa Inggris dan bahasa Indonesia. Apabila terjadi inkonsistensi atau perbedaan penafsiran antara versi bahasa Indonesia dan bahasa Inggris, maka versi bahasa Inggris yang berlaku.

**Governing language**

14. This letter is made in bilingual versions, i.e. in English and Indonesian languages. In the event of any inconsistency or different interpretation between the Indonesian language version and the English language version, the English version shall prevail.

**Klausul mengenai yurisdiksi**

15. Masing-masing Penyewa dan Penyewa Lanjutan dengan ini sepakat bahwa ketentuan bagian 17.2 (Arbitrase) dari Ketentuan Bersama Sewa atau Ketentuan Bersama Sewa Lanjutan dengan ini masing-masing dimasukkan dengan merujuk kepada Pemberitahuan Pelaksanaan ini, tetapi seakan-akan semua rujukan pada bagian-bagian dalam "Perjanjian Sewa Pesawat Terbang" merupakan rujukan-rujukan pada Pemberitahuan Pelaksanaan ini.

**Jurisdiction clause**

15. Each of the Lessee and the Sublessee hereby agrees that the provisions of section 17.2 (Arbitration) of the Lease Shared Terms or the Sub-Lease Shared Terms, respectively, are hereby incorporated by reference into this Enforcement Notice, but as if all references in those sections to the "Aircraft Lease Agreement" are references to this Enforcement Notice.

Hormat kami/ *Yours Faithfully*,

**Greylag Goose Leasing 1410 Designated Activity Company**

______________________

Nama/ *Name*: Roni Heiling Marpaung

Jabatan/ *Title*: Kuasa Hukum/ *Attorney in fact of* Greylag Goose Leasing 1410 Designated Activity Company

Greylag Goose Leasing 1410 Designated Activity Company
Rocktwist House,
Block 1, Western Business Park,
Shannon, Co. Clare,
Ireland

To: **Garuda Indonesia Holiday France S.A.S. ("the Lessee")**
255, rue Saint-Honoré
75001 Paris
France
**Attention: President, GIH France S.A.S**

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Attention: VP Acquisition & Aircraft Management**

**PT Garuda Indonesia (Persero) Tbk (the "Sublessee")**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Attention: VP Corporate Legal & Compliance**

Date: January 4, 2022

***By email and by post***

**ENFORCEMENT NOTICE**

**THIS NOTICE REQUIRES YOUR IMMEDIATE ATTENTION**

**Re: One (1) Airbus A320-200 aircraft with manufacturer's serial number 1410 (the "Aircraft")**

1. We refer to the following documents:

   a. Aircraft Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**ALA**"), between Greylag Goose Leasing 1410 Designated Activity Company ("**Lessor**") and the Lessee;

   b. Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Lease Shared Terms**", together with the ALA, the "**Lease Agreement**"), between the Lessee and Aircastle Advisor (Ireland) Limited;

   c. Aircraft Sub-Lease Agreement (MSN 1410), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sublease ALA**"), between the Lessee and the Sublessee;

Greylag Goose Leasing 1410 Designated Activity Company
Rocktwist House,
Block 1, Western Business Park,
Shannon, Co. Clare,
Ireland

d. Aircraft Sub-Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sub-Lease Shared Terms**", together with the Sublease ALA, the "**Sub-Lease Agreement**"), between the Lessee and the Sublessee;

e. Security Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Security Agreement**") between the Lessor and the Lessee; and

f. Sublease Subordination Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Sublease Subordination Agreement**"), between the Lessor, Lessee, and Sublessee.

2. Words and expressions defined in the Lease Agreement (including by reference to another document) shall bear the same meanings in this notice unless expressed to the contrary.

**Enforcement of Security Agreement**

3. One or more of the Events of Default specified in our previous letters dated 28 January 2020, 13 February 2020 and 27 April 2020 (together, the "**Demand Letters**") is continuing and as a result thereof Lessor is entitled to enforce the security granted to Lessor under the Security Agreement.

4. In accordance with Clause 12(a) of the Sublease Subordination Agreement, Lessor hereby:

   a. ENFORCES THE SECURITY CREATED BY THE SECURITY AGREEMENT AND ITS RIGHTS UNDER THE SECURITY AGREEMENT;

   b. NOTIFIES SUBLESSEE OF THE OCCURRENCE AND CONTINUANCE OF THE EVENTS OF DEFAULT REFERRED TO IN THE DEMAND LETTERS AND THE ENFORCEMENT BY LESSOR OF THE SECURITY CREATED UNDER THE SECURITY AGREEMENT; AND

   c. ACCORDINGLY, NOTIFIES SUBLESSEE THAT, WITH IMMEDIATE EFFECT, ALL RIGHTS, POWERS, AND DISCRETIONS OF THE LESSEE UNDER THE SUB-LEASE AGREEMENT AND ANY OTHER OPERATIVE DOCUMENTS (AS DEFINED IN THE SUB-LEASE AGREEMENT) RELATING TO THE AIRCRAFT WIL BE EXERCISABLE BY, AND NOTICES MUST BE GIVEN TO, THE LESSOR (OR AS IT DIRECTS) TO THE EXCLUSION OF THE LESSEE.

5. The instructions under this Enforcement Notice shall continue to apply until Lessor notifies Sublessee to the contrary.

**Reservation of rights**

Greylag Goose Leasing 1410 Designated Activity Company
Rocktwist House,
Block 1, Western Business Park,
Shannon, Co. Clare,
Ireland

6. This Enforcement Notice is not intended to be exhaustive and there may be other Events of Default which have occurred and/or are continuing which are not specified in this notice and/or of which Lessor is unaware.

7. Lessor reserves its rights to claim from Lessee and/or Sublessee all expenses, losses, claims and damages resulting from the occurrence and continuance of the Events of Default under the Lease Agreement, the Sub-Lease Agreement, the Security Agreement and the Sublease Subordination Agreement.

8. This notice (and the exercise of Lessor's rights as set out herein) is without prejudice to:

   a. any other Event of Default or other default (howsoever described) under the Lease Agreement or under any other Operative Documents and Sublease Subordination Agreement (whether occurring before, on or after the date of this Enforcement Notice);

   b. any of Lessor's rights or remedies under the Lease Agreement, under any other Operative Documents, Sublease Subordination Agreement and/or under applicable law or otherwise, and Lessor may at its option exercise any such rights or remedies at any time; and

   c. the continuing obligations of Lessee (a) as lessee under the Lease Agreement and the other Operative Documents and Sublease Subordination Agreement and (b) as lessor under the Sub-Lease Agreement.

9. Lessor reserves all of its rights and remedies under the Lease Agreement, the Sub-Lease Agreement, under any other Operative Documents and Sublease Subordination Agreement and/or under applicable law (including, without limitation, the right to terminate the leasing of the Aircraft, the right to repossess the Aircraft, the right to require re-delivery of the Aircraft, the right to indemnification for Losses and for any amounts due and payable under or in connection with the Lease Agreement, the Sub-Lease Agreement or any other Operative Documents and Sublease Subordination Agreement and/or the right to claim damages for breach and/or damages arising from any termination).

10. Any delay (whether past, present or future) in the exercise or any non-exercise of any of those rights and remedies by Lessor shall not constitute a waiver of the same.

11. All of Lessor's rights under the Lease and the other Operative Documents remain in full force and effect. No action taken or not taken by Lessor is intended as, and shall not be construed as, a waiver, consent or amendment to the Lease Agreement or the Sub-Lease Agreement.

**Governing law**

Greylag Goose Leasing 1410 Designated Activity Company
Rocktwist House,
Block 1, Western Business Park,
Shannon, Co. Clare,
Ireland

12. This Enforcement Notice will in all respects, including all matters of construction, validity and performance, be governed by and construed and enforced in accordance with the internal laws of the state of New York.

[*signature page follows*]

Yours Faithfully,

**Greylag Goose Leasing 1410 Designated Activity Company**

Name: David Talty

Title: Director

K&L GATES

15 June 2022

Partner: Jason Opperman
jason.opperman@klgates.com
T +61 2 9513 2435

Contact: Cameron Adair
cameron.adair@klgates.com
T +61 2 9513 2556

Our ref: adairc.oppermj

**Private and confidential**

P.T. Garuda Indonesia Ltd
Level 3, Suite 110, 1 Departure Plaza,
Sydney International Airport
Mascot NSW 2020

**Attention: Dony Widojoko, Local Agent**

Dear Mr Widojoko

**Greylag Goose Leasing 1446 Designated Activity Company; P.T. Garuda Indonesia Ltd**

We act for Greylag Goose Leasing 1446 Designated Activity Company.

**Enclosed**, by way of service, is a Creditor's Demand for Payment of Debt.

If you would like to discuss the matter, please contact us.

Yours faithfully

K&L Gates

**K&L Gates**

**Encl.**

# ***Corporations Act 2001*, section 585(a)**

# CREDITOR'S DEMAND FOR PAYMENT OF DEBT

To: P.T. Garuda Indonesia Ltd of Level 3, Suite 110, 1 Departure Plaza, Sydney International Airport, Mascot NSW 2020, ARBN 000 861 165 (the "**company**")

1. The company owes Greylag Goose Leasing 1446 Designated Activity Company of Rocktwist House, Block 1, Western Business Park, Shannon, Co. Clare, Ireland (the "**creditor**"), the amount of USD224,968,492.29, being the total of the debts described in the Schedule (the "**debts**").

2. The debts in the Schedule, either jointly or severally, exceed the statutory minimum of AUD4,000.00 and are due and payable by the company to the creditor.

3. The creditor hereby demands that the company pay the debts so due to the creditor.

4. If the company has not paid the debts within three (3) weeks after service of this demand, the creditor may rely on the failure to pay the debts (jointly or severally) pursuant to section 585(a) of the *Corporations Act 2001* (Cth) as grounds for an application to a court having jurisdiction under section 583(c)(i) of the *Corporations Act 2001* (Cth) for winding up the company on the basis that the company is taken to be unable to pay its debts.

5. The address of the creditor for the purpose of making payment of the debts demanded herein and for service of documents in relation to this demand is: c/- K&L Gates, Level 31, 1 O'Connell Street, Sydney NSW 2000, Australia, for the attention of Jason Opperman, Partner.

## SCHEDULE

| Description of the debt | Amount of the debt (US Dollars) |
|---|---|
| In respect of Airbus A330-300 aircraft with manufacturer's serial number 1446 (the "**Aircraft**"), the creditor refers to the following contractual documents:<br><br>1. Aircraft Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**ALA**"), which incorporates the terms and conditions of the Aircraft | |

| | |
|---|---|
| Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Lease Shared Terms**", together with the ALA, the "**Lease Agreement**"), between the creditor and Garuda Indonesia Holiday France S.A.S. (the "**Lessee**");<br><br>2. Aircraft Sub-Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sublease ALA**"), which incorporates the terms and conditions of the Aircraft Sub-Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sub-Lease Shared Terms**", together with the Sublease ALA, the "**Sub-Lease Agreement**"), between the Lessee and the company;<br><br>3. Security Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Security Agreement**") between the creditor and the Lessee; and<br><br>4. Sublease Subordination Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Sublease Subordination Agreement**"), between the creditor, Lessee, and the company.<br><br>The company has defaulted under the Sub-Lease Agreement as detailed in the **attached** Event of Default letters to the company dated 27 January 2020, 13 February 2020, 27 April 2020 and 7 June 2022 and the Enforcement Notice to the company dated 4 January 2022.<br><br>By reason of the defaults, the creditor is entitled to enforce the security granted to it under the Security Agreement and pursuant to the Sublease Subordination Agreement, and the creditor is entitled to demand payment from the company for the following amounts which are due and owing to the creditor: | |
| a) Total Loss Value | 128,892,864.55 |
| b) Relocation / Ferry Cost | 150,000.00 |
| c) Outstanding Rent as of 9 December 2021 | 20,245,120.00 |

| | |
|---|---|
| d) Outstanding Maintenance Reserves as of 9 December 2021 | 1,134,625.29 |
| e) Default Interest from 1 May 2021 to 9 December 2021 | 1,814,703.69 |
| f) Engine PR Maintenance Exposure | 16,502,283.65 |
| g) Future Rent from 10 December 2021 onwards | 45,451,626.32 |
| h) Future Supplemental Rent (Airframe, Engine LLP, LG & APU) | 3,838,832.50 |
| i) Future Supplemental Rent (Engine PR) | 6,336,627.04 |
| j) Expenses and Legal Fees | 601,809.25 |
| **Total** | **224,968,492.29** |

Dated: 15 JUNE 2022

Signed:

Print name: Jason Opperman
Capacity: Creditor's solicitor on behalf of the creditor

TRUEAERO

**TRUEAERO ASSET MANAGEMENT IRELAND LIMITED**
**25-28 NORTH WALL QUAY**
**Dublin 1**
**Ireland**

January 27, 2020

**Garuda Indonesia Holiday France S.A.S.**
255, rue Saint-Honoré
75001 Paris
France
Attention: President, GIH France S.A.S.

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Acquisition & Aircraft Management

**PT Garuda Indonesia (Persero) Tbk**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Corporate Legal & Compliance

**Re:** **Notice of Event of Default**

Airbus A330-300 Aircraft bearing MSN 1446 and equipped with two (2) Trent 772B engines with engine serial numbers 42264 and 42265 (the "***Aircraft***")

Dear Sirs,

Reference is made to the Aircraft Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Agreement***"), between

Greylag Goose Leasing 1446 Designated Activity Company ("***Lessor***") and Garuda Indonesia Holiday France S.A.S. ("***Lessee***") which incorporates the terms and conditions of the Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Shared Terms***"), between the Lessee and Aircastle Advisor (Ireland) Limited. The undersigned, TrueAero Asset Management Ireland Limited, is the Servicer under the Lease Agreement. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Lease Agreement.

On behalf of Lessor, we hereby formally notify you that certain Defaults and Events of Default have occurred and are continuing under the Lease Agreement, including, but not limited to, Lessee's failure to make payments of Rent—Periodic Amount and Maintenance Amounts when due under the Lease Agreement as set forth on Schedule A. Such payments have not been received by Lessor and such non-payment constitutes an Event of Default under Section 12 of the Lease Shared Terms.

We hereby demand on behalf of Lessor that you pay all past-due amounts.

Finally, we remind you that Section 13.1.4 of the Lease Shared Terms provides that Lessor has the right to recover from Lessee all damages, losses and costs of collection sustained directly or indirectly as a result of an Event of Default.

This notice is without prejudice to any Defaults or Events of Default that may exist or may hereafter occur under the Lease Agreement and we hereby reserve on behalf of Lessor all of its respective rights and remedies with respect to any and all such Events of Default. Any delay or forbearance by Lessor in the enforcement or pursuit of any of its rights and remedies under the Lease Agreement or under applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of Lessor's rights or remedies at a later date and all of such rights and remedies are expressly reserved.

Very truly yours,

TrueAero Asset Management Ireland Limited, as Servicer

By: Henry Garrett

# SCHEDULE A

## Outstanding Receivables

| MSN | Invoice: Name | Amount Due | Date Payment Due | Days Outstanding | Balance Due |
|---|---|---|---|---|---|
| 1446 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-UI--000701 | $ 103,751.28 | 11/15/2019 | 68 | $ 103,751.28 |
| 1446 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-RI--000680 | $ 1,012,256.00 | 11/25/2019 | 58 | $ 1,012,256.00 |
| 1446 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-RI--000719 | $ 1,012,256.00 | 12/25/2019 | 28 | $ 1,012,256.00 |
| 1446 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-UI--000729 | $ 116,549.12 | 12/15/2019 | 38 | $ 116,549.12 |
| 1446 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2020-UI--000790 | $ 124,303.76 | 1/15/2020 | 7 | $ 124,303.76 |
| 1446 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2019-RI--000766 | $ 1,012,256.00 | 1/25/2020 | 0 | $ - |
| 1446 \| Garuda Indonesia Holiday France S.A.S. \| A330 | 2020-RI--000852 | $ 1,012,256.00 | 2/25/2020 | 0 | $ - |
| Total Outstanding for MSN 1446 | | | | | $ 2,369,116.16 |

TRUEAERO

February 13, 2020

**Garuda Indonesia Holiday France S.A.S.**
255, rue Saint-Honoré
75001 Paris
France
Attention: President, GIH France S.A.S.

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Acquisition & Aircraft Management

**PT Garuda Indonesia (Persero) Tbk**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Corporate Legal & Compliance

Re: **Second Notice of Event of Default**

Airbus A330-300 Aircraft bearing MSN 1446 and equipped with two (2) Trent 772B engines with engine serial numbers 42264 and 42265 (the "***Aircraft***")

Dear Sirs,

Reference is made to the Aircraft Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Agreement***"), between Greylag Goose Leasing 1446 Designated Activity Company ("***Lessor***") and Garuda Indonesia Holiday France S.A.S. ("***Lessee***") which incorporates the terms and conditions of the Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Shared Terms***"), between the Lessee and Aircastle Advisor (Ireland) Limited. The undersigned, TrueAero Asset Management Ireland Limited, is the Servicer under

Garuda Indonesia Holiday France S.A.S.
February 13, 2020
Page 2

the Lease Agreement. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Lease Agreement.

As you know, for many months, Defaults and Events of Default have occurred and have been continuing under the Lease Agreement, including, but not limited to, Lessee's failure to make payments of Rent—Periodic Amount and Maintenance Amounts. We formally notified you of those Defaults and Events of Default pursuant to our Notice of Event of Default dated January 27, 2020.

In the spirit of cooperation, we have attempted to develop a payment plan with you. You have, however, failed to collaborate in developing such payment plan.

We hereby reiterate our demand on behalf of Lessor that you immediately pay all past-due amounts, along with default interest on such past-due amounts at the Past Due Rate, as set forth on Schedule A.

It is imperative that we see meaningful progress to cure this substantial delinquency. Otherwise, we will have no choice but to seriously consider commencing the exercise of remedies under Section 13 of the Lease Shared Terms, including issuing a grounding notice and ultimately demanding return of the Aircraft.

We remind you that 13.1.4 of the Lease Shared Terms provides that Lessor has the right to recover from Lessee all damages, losses and costs of collection sustained directly or indirectly as a result of an Event of Default.

This notice is without prejudice to any Defaults or Events of Default that may exist or may hereafter occur under the Lease Agreement and we hereby reserve on behalf of Lessor all of its respective rights and remedies with respect to any and all such Events of Default. Any delay or forbearance by Lessor in the enforcement or pursuit of any of its rights and remedies under the Lease Agreement or under applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of Lessor's rights or remedies at a later date and all of such rights and remedies are expressly reserved.

Very truly yours,

TrueAero Asset Management Ireland Limited, as Servicer

By: Henry Barrett
HENRY BARRETT
DIRECTOR

# SCHEDULE A

## Outstanding Receivables

| MSN | Invoice Type | Invoice: Name | Amount Due | Date Payment Due | Days Outstanding | Balance Due |
|---|---|---|---|---|---|---|
| 1446 | Utilization | 2019-UI--000701 | $ 103,751.28 | 11/15/2019 | 89 | $ 103,751.28 |
| 1446 | Rent | 2019-RI--000680 | $ 1,012,256.00 | 11/25/2019 | 79 | $ 1,012,256.00 |
| 1446 | Rent | 2019-RI--000719 | $ 1,012,256.00 | 12/25/2019 | 49 | $ 1,012,256.00 |
| 1446 | Utilization | 2019-UI--000729 | $ 116,549.12 | 12/15/2019 | 59 | $ 116,549.12 |
| 1446 | Utilization | 2020-UI--000790 | $ 124,303.76 | 1/15/2020 | 28 | $ 124,303.76 |
| 1446 | Rent | 2019-RI--000766 | $ 1,012,256.00 | 1/25/2020 | 18 | $ 1,012,256.00 |
| 1446 | Rent | 2020-RI--000852 | $ 1,012,256.00 | 2/25/2020 | 0 | $ - |
| 1446 | Default Interest - Rent | TBD (Sept 2019 - Jan 2020) | $ 39,477.98 | | | $ 39,477.98 |
| 1446 | Default Interest - Utilization | TBD (Sept 2019 - Jan 2020) | $ 5,274.27 | | | $ 5,274.27 |
| Total Outstanding for MSN 1446 | | | | | | $ 3,426,124.41 |

TRUEAERO

**Garuda Indonesia Holiday France S.A.S.**
255, rue Saint-Honoré
75001 Paris
France
Attention: President, GIH France S.A.S.

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Acquisition & Aircraft Management

**PT Garuda Indonesia (Persero) Tbk**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
Attention: VP Corporate Legal & Compliance

**Wilmington Trust Company**
1100 North Market Street
Wilmington, DE 19890
Attention: Corporate Trust Administration/Liz Hinojosa

April 27, 2020

Re: **<u>Notice of L/C Drawdown and Security Deposit Application</u>**

Airbus A330-300 Aircraft bearing MSN 1446 and equipped with two (2) Trent 772B engines with engine serial numbers 42264 and 42265 (the "***Aircraft***")

Dear Sirs and Madams,

Reference is made to the (i) Aircraft Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease Agreement***"), between Greylag Goose Leasing 1446 DAC ("***Lessor***") and Garuda Indonesia Holiday France S.A.S. ("***Lessee***") which incorporates the terms and conditions of the Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "***Lease***

***Shared Terms***"), between the Lessee and Aircastle Advisor (Ireland) Limited, (ii) Notice of Event of Default, dated January 27, 2020 (the "***First Notice of Default***"), from us to you and (iii) Second Notice of Event of Default, dated February 13, 2020 (the "***Second Notice of Default***"), from us to you. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Lease Agreement.

As identified in both the First Notice of Default and the Second Notice of Default, for many months, Defaults and Events of Default have occurred and have been continuing under the Lease Agreement, including, but not limited to, Lessee's failure to make payments of Rent—Periodic Amount and Maintenance Amounts.

Due to the Events of Default continuing under the Lease Agreement, the Lessor has (i) pursuant to Section 5.2 of the Lease Agreement, drawn upon the full amount of the Letter of Credit, being US$1,500,000, on April 22, 2020 and (ii) pursuant to Section 13.1.3 of the Lease Shared Terms, applied to the partial satisfaction of the Secured Obligations the full amount of the Commitment Fee, being US$2,162,000, on March 31, 2020.

Nothing in this notice shall constitute a waiver of any and all present and future rights, powers, privileges and remedies available to the Lessor under the Lease Agreement, the other Operative Documents and in law, more generally, in connection with or arising from Events of Default, whether or not outstanding at the date of this notice, including, but not limited to, the right to:

(a) ground the Aircraft and ensure that the Aircraft is not brought into service or flight of any kind until further notice by the Lessor;

(b) terminate the leasing of the Aircraft under the Lease Agreement;

(c) retake possession of the Aircraft; and/or

(d) deregister the Aircraft,

and without limitation of the foregoing, we hereby notify you that the Lessor is entitled to immediately exercise such rights during such period as any Events of Default are continuing.

Nothing in this notice shall constitute a waiver of the Lessor's right to make further and other demands and request upon the Lessee in respect of any indebtedness or liability (now or hereafter due and whether actual or contingent) not incorporated in this notice (including without limitation any default interest or other costs).

Nothing in this notice shall constitute a waiver of any Event of Default and nothing in this notice shall prejudice or affect the Lessor's present or future rights and remedies under law and under the Operative Documents.

We remind you that Section 13.1.4 of the Lease Shared Terms provides that the Lessor has the right to recover from Lessee all damages, losses and costs of collection sustained directly or indirectly as a result of an Event of Default.

***

Very truly yours,

**TrueAero Asset Management Ireland Limited**, as servicer

By: Henry Barrett
Name: HENRY BARRETT
Title: DIRECTOR

HISWARA BUNJAMIN & TANDJUNG | IN ASSOCIATION WITH HERBERT SMITH FREEHILLS

18th floor, Tower I, Sudirman 7.8
Jl. Jendral Sudirman Kav. 7 – 8
Jakarta - 10220, Indonesia

T +62 21 3973 8000
F +62 21 3973 6110
hbtlaw.com

Ref No.: 16/06/22

Kepada/ *To*: **Garuda Indonesia Holiday France S.A.S. ("Penyewa / *the Lessee*")**
255, rue Saint-Honoré
75001 Paris
France
**Untuk perhatian / *Attention* : President, GIH France S.A.S**

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Untuk perhatian / *Attention*: VP Acquisition & Aircraft Management**

**PT Garuda Indonesia (Persero) Tbk ("Penyewa Lanjutan / the Sublessee")**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Untuk perhatian / *Attention*: VP Corporate Legal & Compliance**

Tanggal/ *Date*: 7 Juni / *June* 2022

***Melalui email dan pos***

**PEMBERITAHUAN INI AGAR MENJADI PERHATIAN SEGERA**

**Perihal: Satu (1) buah pesawat terbang Airbus A330-300 dengan nomor seri pabrikan 1446 ("Pesawat Terbang")**

1. Kami merujuk kepada dokumen-dokumen berikut ini:

   a. Perjanjian Sewa Pesawat Terbang (MSN 1446), tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**ALA**"), yang memasukkan syarat dan ketentuan dari Ketentuan

***By email and by post***

**THIS NOTICE REQUIRES YOUR IMMEDIATE ATTENTION**

**Re: One (1) Airbus A330-300 aircraft with manufacturer's serial number 1446 (the "Aircraft")**

1. We refer to the following documents:

   a. Aircraft Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**ALA**"), which incorporates the terms and conditions of the Aircraft

Bersama Sewa Pesawat Terbang, tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Ketentuan Bersama Sewa**", secara bersama dengan ALA, "**Perjanjian Sewa**"), antara Greylag Goose Leasing 1446 Designated Activity Company ("**Pemberi Sewa**") dan Penyewa;

Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Lease Shared Terms**", together with the ALA, the "**Lease Agreement**"), between Greylag Goose Leasing 1446 Designated Activity Company ("**Lessor**") and the Lessee;

b. Perjanjian Sewa Lanjutan Pesawat Terbang (MSN 1446), tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**ALA Sewa Lanjutan**"), yang memasukkan syarat dan ketentuan dari Ketentuan Bersama Sewa Lanjutan Pesawat Terbang, tertanggal sejak 28 Oktober 2016 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Ketentuan Bersama Sewa Lanjutan**", secara bersama dengan ALA Sewa Lanjutan, "**Perjanjian Sewa Lanjutan**"), antara Penyewa dan Penyewa Lanjutan;

b. Aircraft Sub-Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sublease ALA**"), which incorporates the terms and conditions of the Aircraft Sub-Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sub-Lease Shared Terms**", together with the Sublease ALA, the "**Sub-Lease Agreement**"), between the Lessee and the Sublessee;

c. Perjanjian Jaminan, tertanggal sejak 27 September 2019 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Perjanjian Jaminan**") antara Pemberi Sewa dan Penyewa; dan

c. Security Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Security Agreement**") between the Lessor and the Lessee; and

d. Perjanjian Subordinasi Sewa Lanjutan, tertanggal sejak 27 September 2019 (sebagaimana diubah, dilengkapi, dinovasi, dialihkan dan diambil alih, "**Perjanjian Subordinasi Sewa Lanjutan**"), antara Pemberi

d. Sublease Subordination Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Sublease Subordination Agreement**"), between the

| | | | |
|---|---|---|---|
| | Sewa, Penyewa, dan Penyewa Lanjutan. | | Lessor, Lessee, and Sublessee. |
| 2. | Kata-kata dan ungkapan-ungkapan yang didefinisikan dalam Perjanjian Sewa (termasuk melalui rujukan kepada dokumen lain) memiliki arti yang sama dalam pemberitahuan ini, kecuali diungkapkan sebaliknya. | 2. | Words and expressions defined in the Lease Agreement (including by reference to another document) shall bear the same meanings in this notice unless expressed to the contrary. |
| **Pelanggaran terhadap kewajiban-kewajiban berdasarkan Perjanjian Sewa** | | **Breach of the obligations under the Lease Agreement** | |
| 3. | Pemberi Sewa telah diberitahukan pada tanggal 31 Mei 2022 bahwa Suku Cadang Pesawat Terbang telah dipindahkan tanpa persetujuannya dan Pesawat Terbang saat itu digunakan untuk keperluan penyediaan suku cadang untuk pesawat terbang lain yang sedang dioperasikan oleh Penyewa Lanjutan ("**Pemindahan Suku Cadang**"), yang melanggar klausul 8.1 (*Tidak Ada Pemindahan Kepemilikan*) dari Ketentuan Bersama Sewa yang menetapkan bahwa Penyewa tidak akan, dan akan mengupayakan bahwa Penyewa Lanjutan tidak akan, tanpa persetujuan tertulis sebelumnya dari Pemberi Sewa, menyerahkan, memindahkan atau melepaskan kepemilikan Pesawat Terbang, Kerangka Pesawat atau Mesin atau setiap Suku Cadang, kecuali apabila sesuai dengan klausul 8 (*Kepemilikan*) dari Ketentuan Bersama Sewa. | 3. | The Lessor was informed on 31 May 2022 that Parts of the Aircraft have been removed without its consent and the Aircraft was being used for the purpose of providing spare parts for other aircraft being operated by the Sublessee ("**Removal of Parts**"), which is in breach of clause 8.1 (*No Transfer of Possession*) of the Lease Shared Terms which specifies that Lessee will not, and will procure that Sublessee will not, without the prior written consent of Lessor deliver, transfer or relinquish possession of the Aircraft, Airframe or an Engine or any Part unless it is in accordance with clause 8 (*Possession*) of the Lease Shared Terms. |
| 4. | Oleh karenanya, Pemindahan Suku Cadang merupakan suatu Peristiwa Cedera Janji berdasarkan klausul 12.2(6) dari Ketentuan Bersama Sewa. | 4. | Accordingly, the Removal of Parts constitute an Event of Default pursuant to clause 12.2(6) of the Lease Shared Terms. |
| 5. | Pemberi Sewa dengan ini meminta bahwa: (a) informasi terperinci dan/atau dokumen-dokumen yang diberikan segera kepada Pemberi Sewa sehubungan dengan Pemindahan Suku Cadang, | 5. | The Lessor hereby requests that: (a) detailed information and/or documents provided to the Lessor promptly in connection with the Removal of Parts, including identifying the Parts that have been |

HISWARA BUNJAMIN & TANDJUNG | IN ASSOCIATION WITH HERBERT SMITH FREEHILLS

termasuk mengidentifikasi Suku Cadang yang telah dipindahkan dan lokasi Suku Cadang yang dipindahkan, dan (b) tidak ada Suku Cadang selanjutnya yang dipindahkan dari Pesawat Terbang tanpa persetujuannya.

6. Berdasarkan paragraf 1.6 (*Pemeriksaan*), lampiran 2 (*Hal-hal Operasional* dari Ketentuan Bersama Sewa, Pemberi Sewa berhak untuk memeriksa Pesawat Terbang, atas biaya Penyewa setelah terjadinya Peristiwa Cedera Janji. Pemberi Sewa dengan ini meminta Penyewa dan Penyewa Lanjutan untuk mengambil tindakan yang diperlukan tersebut untuk memfasilitasi pemeriksaan yang dilakukan Pemberi Sewa dalam waktu 3 hari kalender berikutnya.

**Pencadangan hak**

7. Pemberitahuan ini tidak dimaksudkan agar bersifat menyeluruh dan mungkin terdapat Peristiwa Cedera Janji lain yang telah terjadi dan/atau tengah berlangsung yang tidak disebutkan dalam pemberitahuan ini dan/atau yang tidak diketahui oleh Pemberi Sewa.

8. Pemberi Sewa mencadangkan hak-hak yang dimilikinya untuk mengajukan klaim dari Penyewa dan/atau Penyewa Lanjutan semua pengeluaran, kerugian, tagihan dan ganti rugi (termasuk namun tidak terbatas, setiap biaya yang timbul dari penggantian Suku Cadang untuk Suku Cadang yang dipindahkan dan setiap kerugian terhadap nilai Pesawat Terbang sebagai akibat dari Pemindahan Suku Cadang tersebut) yang disebabkan oleh terjadinya dan berlangsungnya Peristiwa Cedera Janji berdasarkan Perjanjian Sewa, Perjanjian Sewa Lanjutan,

removed and the location of the removed Parts, and (b) no further Parts be removed from the Aircraft without its consent.

6. Pursuant to paragraph 1.6 (*Inspection*), schedule 2 (*Operational Matters*) of the Lease Shared Terms, the Lessor is entitled to inspect the Aircraft, at Lessee's expense following an Event of Default. The Lessor hereby requests the Lessee and the Sublessee to take such necessary action to facilitate Lessor's inspection in the next 3 calendar days.

**Reservation of rights**

7. This Notice is not intended to be exhaustive and there may be other Events of Default which have occurred and/or are continuing which are not specified in this notice and/or of which Lessor is unaware.

8. Lessor reserves its rights to claim from Lessee and/or Sublessee all expenses, losses, claims and damages (including, without limitation, any costs incurring replacement Parts for the removed Parts and any losses in the value of the Aircraft as a result of such Removal of Parts) resulting from the occurrence and continuance of the Events of Default under the Lease Agreement, the Sub-Lease Agreement, the Security Agreement and the Sublease Subordination Agreement.

Perjanjian Jaminan dan Perjanjian Subordinasi Sewa Lanjutan.

| | |
|---|---|
| 9. Pemberitahuan ini (dan pelaksanaan hak-hak Pemberi Sewa sebagaimana diatur dalam Pemberitahuan ini) tidak mengurangi: | 9. This Notice (and the exercise of Lessor's rights as set out herein) is without prejudice to: |
| (a) setiap Peristiwa Cedera Janji atau cedera janji lain (bagaimanapun diuraikan) berdasarkan Perjanjian Sewa atau berdasarkan setiap Dokumen Operasi dan Perjanjian Subordinasi Sewa Lanjutan lain (baik yang terjadi sebelum, pada atau setelah tanggal Pemberitahuan ini); | (a) any other Event of Default or other default (howsoever described) under the Lease Agreement or under any other Operative Documents and Sublease Subordination Agreement (whether occurring before, on or after the date of this Notice); |
| (b) setiap hak atau upaya pemulihan yang dimiliki oleh Pemberi Sewa berdasarkan Perjanjian Sewa, berdasarkan setiap Dokumen Operasi, Perjanjian Subordinasi Sewa Lanjutan lain dan/atau berdasarkan hukum yang berlaku atau lainnya, dan Pemberi Sewa dapat atas opsinya melaksanakan setiap hak atau upaya pemulihan tersebut sewaktu-waktu; dan | (b) any of Lessor's rights or remedies under the Lease Agreement, under any other Operative Documents, Sublease Subordination Agreement and/or under applicable law or otherwise, and Lessor may at its option exercise any such rights or remedies at any time; and |
| (c) kewajiban yang berkelanjutan yang dimiliki Penyewa (a) sebagai penyewa berdasarkan Perjanjian Sewa dan Dokumen Operasi lain dan Perjanjian Subordinasi Sewa Lanjutan (b) sebagai pemberi sewa berdasarkan Perjanjian Sewa Lanjutan. | (c) the continuing obligations of Lessee (a) as lessee under the Lease Agreement and the other Operative Documents and Sublease Subordination Agreement and (b) as lessor under the Sub-Lease Agreement. |
| 10. Pemberi Sewa mencadangkan semua hak dan upaya pemulihan yang dimilikinya berdasarkan Perjanjian Sewa, Perjanjian Sewa Lanjutan, berdasarkan setiap Dokumen Operasi dan Perjanjian | 10. Lessor reserves all of its rights and remedies under the Lease Agreement, the Sub-Lease Agreement, under any other Operative Documents and Sublease Subordination Agreement |

Subordinasi Sewa Lanjutan lain dan/atau berdasarkan hukum yang berlaku (termasuk, namun tidak terbatas pada, hak untuk mengakhiri sewa guna usaha atas Pesawat Terbang, hak untuk mengambil alih kepemilikan Pesawat Terbang, hak untuk meminta penyerahan kembali Pesawat Terbang, hak atas penggantian kerugian untuk Kerugian dan untuk setiap jumlah yang terutang dan harus dibayar berdasarkan atau sehubungan dengan Perjanjian Sewa, Perjanjian Sewa Lanjutan atau setiap Dokumen Operasi dan Perjanjian Subordinasi Sewa Lanjutan lain dan/atau hak untuk menuntut ganti rugi atas pelanggaran dan/atau ganti rugi yang timbul dari pengakhiran).

and/or under applicable law (including, without limitation, the right to terminate the leasing of the Aircraft, the right to repossess the Aircraft, the right to require re-delivery of the Aircraft, the right to indemnification for Losses and for any amounts due and payable under or in connection with the Lease Agreement, the Sub-Lease Agreement or any other Operative Documents and Sublease Subordination Agreement and/or the right to claim damages for breach and/or damages arising from any termination).

11. Setiap keterlambatan (baik di masa lalu, pada saat ini atau di masa mendatang) dalam melaksanakan atau tidak dilaksanakannya setiap hak dan upaya pemulihan oleh Pemberi Sewa bukan merupakan pengesampingan atas hak dan upaya pemulihan tersebut.

11. Any delay (whether past, present or future) in the exercise or any non-exercise of any of those rights and remedies by Lessor shall not constitute a waiver of the same.

12. Semua hak yang dimiliki Pemberi Sewa berdasarkan Sewa dan Dokumen Operasi lain akan tetap berlaku dan memiliki kekuatan penuh. Tidak ada tindakan yang diambil atau tidak diambil oleh Pemberi Sewa yang dimaksudkan sebagai, dan tidak boleh ditafsirkan sebagai, pengesampingan, persetujuan atau perubahan atas Perjanjian Sewa atau Perjanjian Sewa Lanjutan.

12. All of Lessor's rights under the Lease and the other Operative Documents remain in full force and effect. No action taken or not taken by Lessor is intended as, and shall not be construed as, a waiver, consent or amendment to the Lease Agreement or the Sub-Lease Agreement.

**Hukum yang mengatur**

**Governing law**

13. Pemberitahuan Pelaksanaan ini dalam semua hal, termasuk semua permasalahan mengenai penafsiran, keabsahan dan pelaksanaan, akan diatur oleh dan

13. This Enforcement Notice will in all respects, including all matters of construction, validity and performance, be governed by and construed and enforced in

ditafsirkan dan dilaksanakan sesuai dengan hukum dalam negeri negara bagian New York.

accordance with the internal laws of the state of New York.

**Bahasa yang mengatur**

14. Surat ini dibuat dalam versi dua (2) bahasa yakni, bahasa Inggris dan bahasa Indonesia. Apabila terjadi inkonsistensi atau perbedaan penafsiran antara versi bahasa Indonesia dan bahasa Inggris, maka versi bahasa Inggris yang berlaku.

**Governing language**

14. This letter is made in bilingual versions, i.e. in English and Indonesian languages. In the event of any inconsistency or different interpretation between the Indonesian language version and the English language version, the English version shall prevail.

**Klausul mengenai yurisdiksi**

15. Masing-masing Penyewa dan Penyewa Lanjutan dengan ini sepakat bahwa ketentuan bagian 17.2 (Arbitrase) dari Ketentuan Bersama Sewa atau Ketentuan Bersama Sewa Lanjutan dengan ini masing-masing dimasukkan dengan merujuk kepada Pemberitahuan Pelaksanaan ini, tetapi seakan-akan semua rujukan pada bagian-bagian dalam "Perjanjian Sewa Pesawat Terbang" merupakan rujukan-rujukan pada Pemberitahuan Pelaksanaan ini.

**Jurisdiction clause**

15. Each of the Lessee and the Sublessee hereby agrees that the provisions of section 17.2 (Arbitration) of the Lease Shared Terms or the Sub-Lease Shared Terms, respectively, are hereby incorporated by reference into this Enforcement Notice, but as if all references in those sections to the "Aircraft Lease Agreement" are references to this Enforcement Notice.

Hormat kami/ *Yours Faithfully*,

**Greylag Goose Leasing 1446 Designated Activity Company**

______________________

Nama/ *Name*: Roni Heilig Marpaung

Jabatan/ *Title*: Kuasa Hukum/ *Attorney in fact of* Greylag Goose Leasing 1446 Designated Activity Company

Greylag Goose Leasing 1446 Designated Activity Company
Rocktwist House,
Block 1, Western Business Park,
Shannon, Co. Clare,
Ireland

To: **Garuda Indonesia Holiday France S.A.S. ("the Lessee")**
255, rue Saint-Honoré
75001 Paris
France
**Attention: President, GIH France S.A.S**

**PT Garuda Indonesia (Persero) Tbk**
Ground Floor, Management Building
Garuda City
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Attention: VP Acquisition & Aircraft Management**

**PT Garuda Indonesia (Persero) Tbk (the "Sublessee")**
2nd Floor, Management Building,
Garuda City Center
Soekarno-Hatta International Airport
Cengkareng, 19120
Indonesia
**Attention: VP Corporate Legal & Compliance**

Date: January 4, 2022

***By email and by post***

**ENFORCEMENT NOTICE**

**THIS NOTICE REQUIRES YOUR IMMEDIATE ATTENTION**

**Re: One (1) Airbus A320-200 aircraft with manufacturer's serial number 1446 (the "Aircraft")**

1. We refer to the following documents:

    a. Aircraft Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**ALA**"), between Greylag Goose Leasing 1446 Designated Activity Company ("**Lessor**") and the Lessee;

    b. Aircraft Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Lease Shared Terms**", together with the ALA, the "**Lease Agreement**"), between the Lessee and Aircastle Advisor (Ireland) Limited;

    c. Aircraft Sub-Lease Agreement (MSN 1446), dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sublease ALA**"), between the Lessee and the Sublessee;

Greylag Goose Leasing 1446 Designated Activity Company
Rocktwist House,
Block 1, Western Business Park,
Shannon, Co. Clare,
Ireland

d. Aircraft Sub-Lease Shared Terms, dated as of October 28, 2016 (as amended, supplemented, novated, assigned and assumed, the "**Sub-Lease Shared Terms**", together with the Sublease ALA, the "**Sub-Lease Agreement**"), between the Lessee and the Sublessee;

e. Security Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Security Agreement**") between the Lessor and the Lessee; and

f. Sublease Subordination Agreement, dated as of September 27, 2019 (as amended, supplemented, novated, assigned and assumed, the "**Sublease Subordination Agreement**"), between the Lessor, Lessee, and Sublessee.

2. Words and expressions defined in the Lease Agreement (including by reference to another document) shall bear the same meanings in this notice unless expressed to the contrary.

**Enforcement of Security Agreement**

3. One or more of the Events of Default specified in our previous letters dated 28 January 2020, 13 February 2020 and 27 April 2020 (together, the "**Demand Letters**") is continuing and as a result thereof Lessor is entitled to enforce the security granted to Lessor under the Security Agreement.

4. In accordance with Clause 12(a) of the Sublease Subordination Agreement, Lessor hereby:

   a. ENFORCES THE SECURITY CREATED BY THE SECURITY AGREEMENT AND ITS RIGHTS UNDER THE SECURITY AGREEMENT;

   b. NOTIFIES SUBLESSEE OF THE OCCURRENCE AND CONTINUANCE OF THE EVENTS OF DEFAULT REFERRED TO IN THE DEMAND LETTERS AND THE ENFORCEMENT BY LESSOR OF THE SECURITY CREATED UNDER THE SECURITY AGREEMENT; AND

   c. ACCORDINGLY, NOTIFIES SUBLESSEE THAT, WITH IMMEDIATE EFFECT, ALL RIGHTS, POWERS, AND DISCRETIONS OF THE LESSEE UNDER THE SUB-LEASE AGREEMENT AND ANY OTHER OPERATIVE DOCUMENTS (AS DEFINED IN THE SUB-LEASE AGREEMENT) RELATING TO THE AIRCRAFT WIL BE EXERCISABLE BY, AND NOTICES MUST BE GIVEN TO, THE LESSOR (OR AS IT DIRECTS) TO THE EXCLUSION OF THE LESSEE.

5. The instructions under this Enforcement Notice shall continue to apply until Lessor notifies Sublessee to the contrary.

**Reservation of rights**

Greylag Goose Leasing 1446 Designated Activity Company
Rocktwist House,
Block 1, Western Business Park,
Shannon, Co. Clare,
Ireland

6. This Enforcement Notice is not intended to be exhaustive and there may be other Events of Default which have occurred and/or are continuing which are not specified in this notice and/or of which Lessor is unaware.

7. Lessor reserves its rights to claim from Lessee and/or Sublessee all expenses, losses, claims and damages resulting from the occurrence and continuance of the Events of Default under the Lease Agreement, the Sub-Lease Agreement, the Security Agreement and the Sublease Subordination Agreement.

8. This notice (and the exercise of Lessor's rights as set out herein) is without prejudice to:

   a. any other Event of Default or other default (howsoever described) under the Lease Agreement or under any other Operative Documents and Sublease Subordination Agreement (whether occurring before, on or after the date of this Enforcement Notice);

   b. any of Lessor's rights or remedies under the Lease Agreement, under any other Operative Documents, Sublease Subordination Agreement and/or under applicable law or otherwise, and Lessor may at its option exercise any such rights or remedies at any time; and

   c. the continuing obligations of Lessee (a) as lessee under the Lease Agreement and the other Operative Documents and Sublease Subordination Agreement and (b) as lessor under the Sub-Lease Agreement.

9. Lessor reserves all of its rights and remedies under the Lease Agreement, the Sub-Lease Agreement, under any other Operative Documents and Sublease Subordination Agreement and/or under applicable law (including, without limitation, the right to terminate the leasing of the Aircraft, the right to repossess the Aircraft, the right to require re-delivery of the Aircraft, the right to indemnification for Losses and for any amounts due and payable under or in connection with the Lease Agreement, the Sub-Lease Agreement or any other Operative Documents and Sublease Subordination Agreement and/or the right to claim damages for breach and/or damages arising from any termination).

10. Any delay (whether past, present or future) in the exercise or any non-exercise of any of those rights and remedies by Lessor shall not constitute a waiver of the same.

11. All of Lessor's rights under the Lease and the other Operative Documents remain in full force and effect. No action taken or not taken by Lessor is intended as, and shall not be construed as, a waiver, consent or amendment to the Lease Agreement or the Sub-Lease Agreement.

**Governing law**

Greylag Goose Leasing 1446 Designated Activity Company<br>Rocktwist House,<br>Block 1, Western Business Park,<br>Shannon, Co. Clare,<br>Ireland

12. This Enforcement Notice will in all respects, including all matters of construction, validity and performance, be governed by and construed and enforced in accordance with the internal laws of the state of New York.

[*signature page follows*]

Yours Faithfully,

**Greylag Goose Leasing 1446 Designated Activity Company**

Name: David Talty

Title: Director