```
                                                        Page 1

 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 22-11274-lgb

 4   - - - - - - - - - - - - - - - - - - - - - - - - - x

 5   In the Matter of:

 6

 7   PT GARUDA INDONESIA (PERSERO) TBK AND

 8   IRFAN SETIAPUTRA,

 9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  United States Bankruptcy Court

14                  One Bowling Green

15                  New York, NY  10004

16

17                  October 26, 2022

18                  2:03 PM

19

20

21   B E F O R E :

22   HON LISA G. BECKERMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   JR
```

Page 2

1    HEARING re Recognition Hearing

2

3    HEARING re Notice of Hearing / Notice of Filing and Hearing

4    on Verified Petition Under Chapter 15 of the United States

5    Bankruptcy Code and Notice Pursuant to Fed. R. Bankr. P.

6    9017 and Fed. R. Civ. P. 44.1

7

8    HEARING re Objection LIMITED OBJECTION, RESERVATION OF

9    RIGHTS AND REQUEST FOR CASE MANAGEMENT CONFERENCE BY THE

10   GREYLAG ENTITIES AS TO PETITION FOR RECOGNITION OF FOREIGN

11   MAIN PROCEEDING AND MOTION FOR ORDER GRANTING RELATED RELIEF

12   PURSUANT TO 11 U.S.C. 1515, 1517, 1520 AND 1521 (related

13   document(s)7)

14

15   HEARING re Declaration OF ROBERT HONEYWELL IN SUPPORT OF

16   LIMITED OBJECTION, RESERVATION OF RIGHTS AND REQUEST FOR

17   CASE MANAGEMENT CONFERENCE BY THE GREYLAG ENTITIES AS TO

18   PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND

19   MOTION FOR ORDER GRANTING RELATED RELIEF PURSUANT TO 11

20   U.S.C. 1515, 1517, 1520 AND 1521 (related document(s)7)

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
                                                        Page 3

 1   A P P E A R A N C E S :

 2

 3   CLEARY GOTTLIEB STEEN & HAMILTON LLP

 4        Attorneys for Irfan Setiaputra and Prasetio as foreign

 5        representatives of Garuda Indonesia

 6        One Liberty Plaza

 7        New York, NY 10006

 8

 9   BY:   THOMAS S. KESSLER

10         RICHARD JAMES COOPER

11

12   K&L GATES

13        Attorneys for Greylag Entities

14        599 Lexington Avenue

15        New York, NY 10022

16

17   BY:   ROBERT HONEYWELL

18

19   ALSO PRESENT TELEPHONICALLY:

20   IBRAHIM SJARIEF ASSEGAF

21   PRASETIO PRASETIO

22

23

24

25
```

Page 4

P R O C E E D I N G S

1

2          THE COURT:  Good afternoon, this is Judge

3    Beckerman, Court is now in session.  I'm going to go ahead

4    and call the case and when I do, I'm going to ask for the

5    attorneys to please put their appearances on the record.

6    And then I'll ask them to please identify themselves when

7    they're speaking again for the record.  Case number 22-

8    11274, PT Garuda Indonesia (Persero) Tbk.  May I have

9    appearances of counsel?

10         MR. KESSLER:  Good afternoon, Your Honor, Thomas

11   Kessler, Cleary, Gottlieb, Steen, & Hamilton on behalf of

12   Irfan Setiaputra and Prasetio as foreign representatives of

13   Garuda Indonesia.  And I'm here with my colleague, Rich

14   Cooper.

15         THE COURT:  Thank you.

16         MR. HONEYWELL:  Good afternoon, Your Honor.

17   Robert Honeywell, K&L Gates with the Greylag Entities.

18         THE COURT:  Thank you.  Any other appearances of

19   counsel?  Okay.  All right Mr. Kessler, I'm going to turn

20   over the virtual podium to you.  It's obviously here for

21   your recognition.  You know, motion.

22         MR. KESSLER:  Yes, thank you, Your Honor.  Again,

23   for the record, Tom Kessler from Cleary Gottlieb.  As Your

24   Honor mentioned, we're here today on the foreign

25   representatives request for recognition of their PKPU

Page 5

1    proceeding.  I'm pleased to report that the request for

2    recognition is uncontested.  I'm also pleased to report that

3    just this morning we were able to resolve the one limited

4    objection that was filed by the Greylag Entities, Mr.

5    Honeywell's clients.  And so today's proceedings will be

6    entirely uncontested.  I'll note that the revised proposed

7    form of order memorializing the agreement between Garuda and

8    the Greylag Entities was filed at ECF number 19, and we've

9    also had copies hand-delivered to Your Honor's chambers, so

10   those should be on their way as well.

11         Given that, subject to Your Honor's preference, I

12   thought what we might do is start with a very brief

13   introduction to the company, and then we'll move to the

14   request for recognition.

15         THE COURT:  That is fine, Mr. Kessler.

16         MR. KESSLER:  Great, before we do that, I just

17   want to do a little housekeeping.  As you know, in support

18   of our request for recognition and in support of the

19   verified petition, there are three declarations.  The

20   declarations of Irfan Setiaputra, Prasetio, and Ibrahim

21   Assegaf, the company's Indonesia counsel, those are at

22   dockets number three, four, and five, respectively.  And I

23   just request that we move those into evidence.

24         THE COURT:  Okay, that's fine, Mr. Kessler.  Why

25   don't we do them one by one, just to see if there's any

Page 6

1   objections.  I'm sure there won't be, but nevertheless.

2   Okay, I believe we have the declaration of Prasetio, so

3   there's been a request to move that into evidence.  Are

4   there any objections to that?  Is there anybody that would

5   like to cross-examine Dr. Prasetio?  Okay, hearing none it's

6   admitted into evidence.

7          Okay, I believe the next person was -- just give

8   me a second here.  (indiscernible) a declaration here.

9   Declaration of Irfan Setiaputra, I hope I say that right,

10  I'm sure that's not right.

11          MR. KESSLER:  Perfect.

12          THE COURT:  As the foreign representative -- the

13  other foreign representative, and so I'll ask, are there any

14  parties who have any objection to moving that declaration

15  into evidence?  Okay, hearing none would anybody like to

16  have the opportunity to cross-examine Mr. Setiaputra?  Okay,

17  hearing none we will move onto the (indiscernible), give me

18  one second here.  I will tell you I had enjoyed reading the

19  declaration, and especially the law of Indonesia, which I

20  had not had the opportunity to read before in my practice or

21  before since I've been on the bench, I've never had -- well,

22  I've had a lot of Chapter 15's both in practice and on the

23  bench, I have not had the benefit of Indonesian law, so it

24  was very interesting to me.

25          MR. KESSLER:  Wonderful.

```
 1              THE COURT:  Okay, we have the declaration of

 2    Ibrahim -- oh, I'm sure I'm going to say this wrong.

 3    Sjarief Assegaf, I said that remotely right.  Would anybody

 4    have any objection to having that moved into -- declaration

 5    moved into evidence?  Okay, hearing none, would anybody like

 6    to cross-examine the Declarant?  Hearing none, okay that's

 7    admitted into evidence.  So, all three of the declarations

 8    have now been admitted into evidence, Mr. Kessler.

 9              MR. KESSLER:  Great, thanks, Your Honor.  With

10    that, I'll cede the virtual podium -- well, and I guess the

11    actual podium to my colleague, Rich Cooper.

12              MR. COOPER:  Yes.  Good afternoon, Judge

13    Beckerman, Rich Cooper of Cleary Gottlieb on behalf of the

14    foreign representative, nice to see you again.

15              THE COURT:  Nice to see you too, Mr. Cooper.

16              MR. COOPER:  Judge Beckerman, I thought what we

17    would do is just do a very quick background on Garuda, and

18    the context in which we appear before you today.  Garuda was

19    incorporated in 1950.  It is the national airline of

20    Indonesia.  The company's core business is commercial

21    passenger business.  As of July 2022, there are -- it flies

22    to 44 domestic flights and 14 international flights

23    throughout Europe, Asia, the Middle East, and Australia.

24              Like many airlines, when the global pandemic hit

25    Garuda suffered immensely.  Just to give you a little bit of
```

Page 8

1    context for that, in fiscal year 2020 as a result of the

2    pandemic, Garuda served less than 20 -- less than a third of

3    the number of airline passengers as compared to pre-pandemic

4    levels.  The impact of the pandemic on Garuda proved to be

5    longer-term in -- than many other airlines due to the

6    ongoing travel restrictions which were only finally fully

7    relaxed earlier this year.  Garuda, when the pandemic first

8    hit, Garuda undertook a number of steps to try to mitigate

9    the effects of the pandemic and respond to the financial

10   challenges, including liquidity challenges that it was

11   experiencing.

12            It optimized its cargo and charter service to try

13   to offset the decline in its passenger business.  It

14   reduced, to the extent it could, its operational cost.  It

15   received -- requested and then received from the Indonesian

16   government a $1,000,000,000,000 rupiah loan.  And it

17   conducted, on an out of Court basis a (indiscernible) of its

18   (indiscernible) trust holders that represented about

19   $500,000,000 of indebtedness.  It did that to extend the

20   maturity of those certificates and to relax its -- the

21   convenance that pertained to them.

22            Nonetheless, because the pandemic continued and

23   its financial challenges were clear, in 2021 Garuda

24   determined that it would need to have a comprehensive

25   balance sheet and an operational restructuring to

Page 9

1   reconfigure its fleet, to take into account the reduction in

2   its passenger business, and to address its balance sheet and

3   liquidity issues.  Garuda announced to the market and to its

4   creditors that would -- in 20 -- in mid 2021 that it would

5   undertake that effort and it retained advisors and began

6   that process.  In October of 20 -- October 22nd of 2021, one

7   of Garuda's creditors filed a PKPU petition against Garuda,

8   and commenced a PKPU process in Indonesia, which is as you -

9   - as Your Honor may know now having read some of the

10  materials that we've supplied, is a Court-enforced

11  suspension of payment obligations that is regulated as part

12  of the Indonesian insolvency laws.

13          That proceeding provides for comprehensive method

14  for a debtor to reach a composition with its creditors, and

15  to restructure, if possible, its ongoing operations.  I'll

16  talk just briefly about the PKPU plan itself, although we

17  recognize today that that is not in front of Your Honor.

18  And again, just to give you a bit of context about the plan

19  so that you can understand that in the context of the

20  proceeding itself.  On June 17th of this year, Garuda

21  proposed to its creditors, formally the PKPU plan.  It was

22  developed over an extensive process with an ad-hoc group of

23  its aircraft lessors, (indiscernible) holders, and a number

24  of other financial and non-financial creditors.

25          And working together, they agreed on the outlines

1    of a plan that would restructure over $9,000,000,000 of

2    debt.  On June 17th, the voting creditors of the PKPU

3    approved that plan, and that approval included over 95

4    percent in number headcount of creditors, and over 97

5    percent in value of voting creditors.  Because there was no

6    secured debt and no secured creditors, the PKPU proceeding

7    was approved by the Court, and that occurred on June 27th,

8    10 days after the vote took place.  And on October 19th of

9    this year, the Indonesian Supreme Court formally denied the

10   only appeal of the PKPU plan that had been submitted.  With

11   that, Your Honor, I will turn it back to Mr. Kessler.  And

12   we will continue with these proceedings.

13           THE COURT:  Okay, thank you very much, Mr. Cooper.

14           MR. KESSLER:  Again, just for the record, Your

15   Honor, Tom Kessler from Cleary Gottlieb.  So, turning to the

16   requests for recognition set out in the verified petition we

17   believe the record amply establishes that recognition is

18   warranted under section 1517 of the Bankruptcy Code.  First,

19   the PKPU proceeding is a foreign proceeding.  Courts in this

20   District have held on a number of occasions that a PKPU

21   proceeding is a foreign proceeding as that term is defined

22   by section 101 of the Bankruptcy Code.  And we explain in

23   the verified petition and in the Indonesian Law Declaration

24   how the proceeding satisfies that definition.

25           And that's in the verified petition at paragraphs

Page 11

1    30 -- 33 to 35.  Here, the PKPU unquestionably is a foreign

2    main proceeding, within the meaning of section 1502 because

3    its occurring in Indonesia, where Garuda has its center of

4    main interests.  We think Garuda's COMI is squarely in

5    Indonesia.  It has a registered office in Jakarta,

6    Indonesia, and therefore is entitled to the presumption of

7    COMI under section 1516(c).  We submit there's no evidence

8    in the record to rebut that presumption, and in fact to the

9    contrary, all of the record evidence reinforces our position

10   that the COMI is in Indonesia, including because Indonesia

11   is the location where the majority of Garuda's assets are,

12   as well as its employees, officers, and directors.

13          Second, as evidenced by the Board minutes attached

14   to the Setiaputra Declaration at Exhibit D, the foreign

15   representatives were duly appointed by the Board for the

16   purpose of commencing this Chapter 15 proceeding and

17   representing Garuda during the course of these proceedings.

18   And finally, the verified petition meets the requirements of

19   section 1515, including because the case was commenced by

20   the filing of a petition for recognition in accordance with

21   sections 1504 and section 1509(a).  The foreign

22   representative has submitted -- representatives have

23   submitted all of the documents and other information

24   required by section 1515(b), including a copy of the

25   documents commencing the PKPU proceeding and the Board

Page 12

1    minutes recognizing the foreign representative's

2    authorization to file and represent Garuda in these

3    proceedings.

4           And finally, the verified petition identifies the

5    foreign proceedings as that term is defined in section 101

6    of the code.  As I mentioned at the outset, Your Honor,

7    there were no objections to the request for recognition of

8    the PKPU proceeding as a foreign main proceeding.  There

9    were two aircraft lesser entities that we refer to

10   collectively as the Greylag Entities, or Greylag that filed

11   a limited objection proposing certain modifications to our

12   original proposed order.  As I previewed at the outset, I'm

13   very pleased to report that we were able to agree on some

14   edits to the proposed order that have been filed, at ECF

15   number 19 in clean and in black line.

16          And again, provided to Your Honor in hard copy

17   just a bit ago.  With those revised edits, the limited

18   objection of Greylag is resolved in its entirety, as you'll

19   see from the redline, the revisions are largely procedural

20   in nature.  If it would be helpful to the Court, I'm happy

21   to walk through any or all of those edits or otherwise

22   answer any questions the Court may have.

23          THE COURT:  Okay, thank you, Mr. Kessler.  While I

24   just, obviously, printed out the order, sorry for my -- if I

25   went off my screen for a second just so I could see what was

Page 13

```
 1    resolved, because obviously there was a lot of back and

 2    forth in the papers about the proposed changes to the order.

 3    I guess what I was just concerned about from having read the

 4    Greylag Entities objection, limited objection, was just

 5    trying to understand what the concern was about this

 6    proceeding, and how it interfaced or doesn't interface with

 7    what's going on elsewhere.

 8            Because that obviously seemed to be the biggest

 9    issue, and obviously, a number of the proceedings that -- I

10    say proceedings generally, including arbitration proceeding,

11    not meaning proceeding for insolvency, because obviously

12    there's many of the proceedings that were listed in

13    Greylag's limited objection were not insolvency proceedings,

14    but in fact were other types of proceedings, either

15    arbitration proceedings going on elsewhere or proceedings

16    before the French Court, for various issues.

17            And I guess I wanted to understand how the concern

18    was that that might interact with my -- with, you know, what

19    goes on here.  There was certainly some of the relief that

20    was requested, obviously no disrespect to Greylag, that

21    would have gone beyond what I think would be issues before

22    me, but I don't know enough about those litigations or

23    matters to necessarily have the right perspective on that.

24    I mean, obviously the Australian liquidation proceeding, I

25    understand what that is, but I'm not -- obviously the
```

1    arbitrations were confidential in nature, and my

2    understanding, and then I have obviously looked at the

3    French proceedings, I understand what was being done there

4    in terms of I guess attachment would be the word I would

5    use, for purposes of that.

6            But I don't have enough understanding of what the

7    concerns were about what might happen here and how that

8    might impact what's going on with, you know, elsewhere.

9            MR. KESSLER:  Sure, Your Honor.  I think some of

10   that may be better addressed by Mr. Honeywell than me, but

11   I'll start off by saying I think we all agree in principle

12   on what the scope of the automatic stay under section 362

13   has made applicable by section 1520(a), but the scope of

14   that stay is, and what it applies to, what it doesn't apply

15   to --

16            THE COURT:  Mm hmm.

17            MR. KESSLER:  I think the edits that we have

18   agreed to, I think are designed to eliminate what some may

19   perceive as ambiguity, whether that's to a reader of the

20   order who's unfamiliar with the provisions of the United

21   States Bankruptcy code and exactly how it works, but I think

22   we're in agreement on what the consequences of this

23   proceeding is, in particular this order and the recognition

24   that Your Honor is considering as it relates to those

25   proceedings.  So, I don't know if perhaps Mr. Honeywell has

Page 15

1   anything he would like to add, but I think we're aligned in

2   terms of where this proceeding stops and those unrelated

3   proceedings begin.

4           THE COURT:  Okay.

5           MR. HONEYWELL:  Good afternoon, Your Honor, Robert

6   Honeywell, K&L Gates, (indiscernible).  Yes, I'm happy to

7   address why we filed what we did.  The main concern we had

8   upfront is that some of these foreign proceedings filed by

9   the Greylag Entities and other countries having been

10  mentioned and there are provisions of the PKPU plan that we

11  are concerned may affect those other proceedings.  As Mr.

12  Cooper said, the enforcement of the PKPU plan is not before

13  Your Honor today.  And that was one of the main concerns we

14  had immediately is that there were references to various

15  provisions of Chapter 15 that involve additional relief.

16          THE COURT:  Mm hmm.

17          MR. HONEYWELL:  And, you know, specifically under

18  section 1507 and 1521, and those are normally sought for

19  additional injunctive relief or enforcement of a plan.  So,

20  we reached out to Cleary just to be very, very clear that

21  that is not what's happening now.  'Cause frankly, Your

22  Honor, when we saw their papers that said nothing was

23  happening in the US, there were no creditor actions in the

24  US, the question that first popped into our heads, which we

25  put on our paper as well, why did you file this?

Page 16

1          So, we just wanted to be super, super clear, and

2     you'll see that most of our proposed edits are reflected in

3     what was just filed, that recognition is one thing,

4     enforcement is another.  And we've been very frank with

5     Cleary and the petitioners about our concerns about the

6     plan.  And we've set that forth in our limited objection as

7     well, specifically the main number one issue is of course

8     third-party releases, which are very controversial, as you

9     know, in many cases, and they have to be looked at very

10    carefully.

11         And the number one feature of the PKPU plan that

12    jumped out at us, which is at issue in the French

13    (indiscernible) in particular is that even though the French

14    subsidiary, Garuda Indonesia Holiday France was not a debtor

15    in the PKPU case, the PKPU plan does proport to release any

16    claims against that French entity.  So, that frankly is a

17    big issue that's of concern to us should the petitioners

18    ever file a motion before Your Honor to actually enforce the

19    PKPU plan.  So, we just wanted to be super clear about what

20    this recognition order does and does not do.

21         And so we agreed, as you see on the language that

22    specifically limits (indiscernible) recognition and also

23    very, very carefully makes clear that the stay under 1520

24    upon recognition only applies in the United States, which of

25    course is the intent of Chapter 15.  So, we had some fairly

Page 17

1   surgical edits to the order, and fortunately we were able to

2   agree with the petitioners on those edits.

3           THE COURT:  Okay.  Understood.  I have one

4   question for you, Mr. Honeywell, but this might also be a

5   question for Mr. Kessler.  And my understanding is that the

6   PKPU plan was obviously appealed, and that the Supreme Court

7   denied it.  I assume for Indonesian purposes, not other

8   areas, but Indonesian purposes that probably is the end of

9   it because you can't appeal above the Supreme Court, but

10  maybe that's a wrong assumption on my part.

11          MR. HONEYWELL:  It's funny you should mention

12  that, Your Honor, 'cause I was going to address that as

13  well, because that was my assumption as well from a US point

14  of view.  It's not in the records yet, but I have been

15  informed by our Indonesian counsel that there actually is

16  still an appeal period that is pending.  And that may still

17  be taken from this.  So, that final order of the Supreme

18  Court is still not final, in terms of it really being over.

19  So, that's just based on my understanding, based on what --

20          THE COURT:  Okay.

21          MR. HONEYWELL:  Yeah.

22          THE COURT:  Understood, because, you know, you

23  were obviously expressing concerns about enforcement of the

24  plan, and while I don't know exactly 100 percent why Mr. --

25  why the debtor -- the foreign debtors decided to file a

Page 18

1    Chapter 15 proceeding here, my assumption is because there

2    are a number of creditors who are clearly US based.  I mean,

3    the order itself, with the issues they've worked out prior

4    to even filing the order that they worked out with you

5    recognized, you know, involved entities that are located in

6    the United States.  I mean, certainly Boeing, for example,

7    is a US entity located in the US, and so there are certainly

8    a number of their creditors, presumably, or parties that

9    they have contracts with, important contracts with,

10   presumably, from the order, that have offices or operations

11   here in addition to of course the airline itself having

12   some.

13          But just, you know, the international operations,

14   but I presume that they're interfacing does, you know, does

15   involve US entities, then that's why they probably decided

16   to file a proceeding here, I'm sure with the ultimate goal

17   of seeking to enforce the plan, which I'm sure you

18   understand too, although that's not before me because

19   otherwise it wouldn't make a lot of sense as to why it would

20   be necessary, but that would be my guess, but --

21          MR. HONEYWELL:  Yes, Your Honor, that's -- was my

22   guess as well, because you know, you saw on the service list

23   there were several US entities that were listed, and so

24   naturally of course the purpose of the Chapter 15 is to

25   enforce whatever you're doing abroad to your creditors in

Page 19

1   the US.  I will let the petitioners and Cleary speak as to

2   whether there are any other reasons, but that's not before

3   Your Honor today.  Our number --

4           THE COURT:  No, of course not.  Understood.

5           MR. HONEYWELL:  Yeah.  Our number one concern of

6   course is that they're somehow going to use the Chapter 15

7   proceeding, which is designed for the US to somehow affect

8   what we're doing in other countries.  So, it's a

9   jurisdictional issue, it's also an enforcement issue.  We

10  just want to be super clear what is the provence of this

11  case?

12          THE COURT:  (overlapping conversation) Mm hmm.  I

13  understand.  Okay.  All right, Mr. Kessler did you have

14  anything else that you wanted to add, or Mr. Honeywell,

15  before I go ahead and rule?

16          MR. KESSLER:  Your Honor, I'll just say, just so

17  the record is clear, I think is we've all acknowledged now

18  the PKPU plan and its enforcement or what may happen to it

19  in the future is not currently before the Court.

20          THE COURT:  Mm hmm.

21          MR. KESSLER:  Obviously Mr. Honeywell and I

22  disagree about a variety of issues as how the PKPU plan

23  works and what it's number one or number two features may

24  be, and I look forward to engaging with him and with Your

25  Honor on that, but wanted to note for the record of course

Page 20

1  that you know, we don't necessarily agree with all the

2  propositions that Mr. Honeywell has stated in respect to the

3  PKPU plan or the proceeding.  But, I think we're all on the

4  same page with that, and that's all I had, Your Honor.

5              THE COURT:  Okay.  (overlapping conversation) for

6  me today, so --

7              MR. HONEYWELL:  One bookkeeping thing, I guess.  I

8  submitted the declaration too, I can re-submit it later if

9  necessary, but if there are no objections, I'll move that

10  into evidence.

11              THE COURT:  Okay, I guess Mr. Kessler, do you have

12  any objection to my admitting Mr. Honeywell's declaration

13  into evidence?

14              MR. KESSLER:  Certainly not.

15              THE COURT:  Okay.  All right.  I don't believe

16  anybody else on the -- I'll ask, does anybody else have any

17  objections to admitting Mr. Honeywell's declaration?  Would

18  anyone like to cross-examine Mr. Honeywell?  I'm sure we

19  won't be doing that today.  All right, Mr. Honeywell, your

20  declaration is admitted into evidence.

21              MR. HONEYWELL:  Thank you, Your Honor.

22              THE COURT:  No problem.  All right, well I'm glad

23  you all were able to work out your differences for purposes

24  of today, I'm sure down the road there may be other issues,

25  but not at -- not today, so.  All right, well thank you very

Page 21

1    much.  So, just for the record, this is my ruling.  The

2    debtor is PT Garuda Indonesia (Persero) Tbk.  The Court

3    finds that the debtor satisfies the requirements of section

4    109 of the Bankruptcy code, 109(a) provides that

5    notwithstanding any other provision of this section, only a

6    person that resides, has a domicile, a place of business, or

7    a property in the United States or municipality may be a

8    debtor under this title.

9             As set forth in the declaration submitted in

10   support of a verified petition, Cleary, Gottlieb, Steen &

11   Hamilton, LLP holds an unused retainer in the amount of

12   approximately $300,000 from the debtor in a bank account in

13   New York, NY in connection with certain legal services

14   retained in respect of Garuda's restructuring.

15   Additionally, certain of Garuda's contracts and debt

16   obligations are governed by New York law.  Thus the debtor

17   is qualified to be a debtor under section 109(a) of the

18   Bankruptcy Code.

19             Venue is also proper in the Southern District of

20   New York because of the debtor's property located in this

21   District.  The debtor's chapter 15 case was duly and

22   properly commenced as is required under section 1504 and

23   1509(a) of the Bankruptcy Code.  Pursuant to Bankruptcy code

24   section 1517, a foreign proceeding is recognized if the

25   proceeding is a foreign main proceeding or a foreign non-

Page 22

1    main proceeding as defined by Bankruptcy Code section 1502.

2    The foreign representative applying for the recognition is a

3    person or a body, and the petition for recognition meets the

4    requirements of Bankruptcy Code section 1515.

5            A foreign main proceeding is a foreign proceeding

6    pending in a country where the debtor has the center of its

7    main interests.  Bankruptcy Code section 1515 requires parti

8    -- presentation of a certified copy of the decision

9    commencing the foreign proceeding and appointing the foreign

10   representative.  A certificate from the foreign

11   (indiscernible) existence of the proceeding and the

12   appointment of the representative, or, in the absence of one

13   or two, evidence which the Court deems sufficient to confirm

14   the existence of the foreign proceeding and appointment of

15   the foreign representative.

16           The petition must also be accompanied by a

17   statement of identifying all known foreign proceedings with

18   respect to the debtor, and if applicable, a translation of

19   the evidentiary materials into English.  These requirements

20   were met by the debtor.  Pursuant to section -- Bankruptcy

21   Code section 1517, a foreign main proceeding shall be

22   recognized if it is pending in a country where the debtor

23   has the center of its main interests.  In the absence of

24   evidence to the contrary, the debtor's registered office is

25   presumed to be the center of the debtor's main interest, see

Page 23

1    section 1516(c).

2          The presumption in favor of the place of

3    registration can be rebutted by showing that the home had

4    office functions were carried out in a jurisdiction other

5    than where the registered office was located.  See in re:

6    Avanti, 582 B.R. at page 611.  To determine the debtor's

7    center of main interest Courts look at a non-exclusive list

8    of factors including the location of the debtor's

9    headquarters, a location of those who actually manage the

10   debtor, the location of the debtor's primary assets, the

11   location of the majority of the debtor's creditors or the

12   majority of the creditors who would be affected by the case,

13   and/or the jurisdiction whose law would apply to most

14   disputes.

15         See Morning Mist Holdings Ltd. V. Krys in re:

16   Fairfield Sentry Ltd., 714F.3d127 at page 137, Second

17   Circuit, 2013.  Pursuant to the approval of Garuda's Board

18   memorialized in the Garuda Board of Directors minutes at the

19   meeting dated September 15th, 2022 and as acknowledged and

20   consented to by the PKPU administrators, each of the foreign

21   representatives, Irfan Setiaputra, and Dr. Prasetio has been

22   appointed to act as the foreign representative of -- in

23   Garuda's PKPU proceeding for the purposes of this Chapter 15

24   case, and authorized to commence this Chapter 15 case.

25         Accordingly, they each are a foreign represent of

Page 24

1    the debtor within the meaning of section 10124 of the

2    Bankruptcy Code.  As set forth in the declaration of Ibrahim

3    Sjarief Assegaf, the debtor is the subject of a Court-

4    supervised suspension of payments proceeding known as a PKPU

5    proceeding.  Pending before the Commercial Court of the

6    Central Jakarta District Court, the PKPU proceeding is a

7    foreign proceeding as defined in section 10123 of the

8    Bankruptcy Code.

9            This Court has previously recognized PKPU

10   proceedings under Indonesian law as foreign proceedings in a

11   Chapter 15 case, see as an example in re: TK Bakrie Telecom

12   Tbk, 628 B.R. 859 at page 875, Bankruptcy Court SDNY 2021.

13   A declaration was submitted as noted and admitted into

14   evidence by the foreign law expert, Mr. Assegaf.  The debtor

15   is organized under the laws of Indonesia.  The debtor's

16   registered office and headquarters are all located in

17   Indonesia.  All of its officers and almost all of the

18   debtor's employees are located in Indonesia.  Its key

19   corporate activities occur in Indonesia.  It's book and

20   records are located in Indonesia.  And the majority of its

21   assets are located in Indonesia.

22            Accordingly, based on the evidence that was put

23   before this Court, the debtor's center of main interest is

24   in Indonesia.  Therefore, the Court finds that the PKPU

25   proceeding pending in Indonesia is a foreign main

Page 25

1    proceeding.  As noted previously, a limited objection to the

2    verified petition was filed by Greylag Goose Leasing, 1446

3    designated activity company, and Greylag Goose Leasing, 1410

4    designated activity company seeking changes to the proposed

5    form of order.  The parties have resolved that issue with

6    the revised proposed form of order that was filed with the

7    Court just before this hearing.

8          I note that the Courts obviously considered all

9    the pleadings that were put before it, in addition to the

10   verified petition for recognition and the declarations that

11   were admitted into evidence.  Obviously, the Court did read

12   the limited objection as well as the response that was filed

13   to that.  Accordingly, the Court finds that the verified

14   petition for recognition satisfies the requirements of 1515

15   and I will go ahead and grant the verified petition.

16         The Court has had the opportunity of reviewing the

17   revised proposed form of order, and the changes that were

18   made to -- in various rounds, first the initial revised form

19   of order that resolved issues with respect to parties who

20   raised informal objections, including Boeing and the

21   International Air Transport Association, as well as the

22   changes -- more extensive changes that were worked out

23   previously right before this hearing and filed with the

24   Court relating to the Greylag Entities.

25         And the Court has re -- had an opportunity to

Page 26

1   review the revised form of orders and will go ahead and

2   enter the second form of revised form of order.

3          MR. KESSLER:  Thank you, Your Honor.  We can

4   submit a word version of that order to chambers directly

5   after this hearing.

6          THE COURT:  Thank you very much.

7          MR. HONEYWELL:  Your Honor, quickly I conferred

8   with Cleary ahead of time, there happens to be a typo.

9          THE COURT:  Oh.

10          MR. HONEYWELL:  At the end of --

11          THE COURT:  (overlapping conversation) Excuse me.

12          MR. HONEYWELL:  Tom, do you want to mention that,

13   or --

14          MR. KESSLER:  Sure, yeah, Your Honor, there's a

15   typographical error in one of the paragraphs of the order,

16   it's paragraph six.  Certain language is just duplicated,

17   and so we'll delete the duplicative language at the end of

18   paragraph six.  It's on page seven of the redline.

19          THE COURT:  Okay.  I see what you mean.

20          MR. KESSLER:  Yeah.  So, we'll fix that.

21          THE COURT:  Okay, that's fine.  Thank you.

22          MR. HONEYWELL:  Thank you, Your Honor.

23          THE COURT:  All right.  Okay.  Well, we'll wait to

24   get the revised form of order in Word and we'll go ahead and

25   enter that.

Page 27

1                    MR. KESSLER:   Okay.   Thank you very much, Your

2      Honor.   I appreciate your time.

3                    THE COURT:   Right.   Was there anything else that

4      you wanted to discuss today about the matter?

5                    MR. KESSLER:   Not from the Petitioners, Your

6      Honor.

7                    THE COURT:   Okay.   Mr. Honeywell?

8                    MR. HONEYWELL:   No, thank you so much, Your Honor.

9                    THE COURT:   Okay.   Well, thank you all, I'm glad

10     you were able to work some things out before the hearing.

11     Thank you all for appearing, and Court is adjourned for the

12     day.

13                   MR. KESSLER:   Thank you, Your Honor.

14                   THE COURT:   Have a nice day.

15                   MR. HONEYWELL:   You too.

16                   MR. KESSLER:   You too.

17                   (Whereupon these proceedings were concluded)

18

19

20

21

22

23

24

25

Page 28

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *[signature: Sonya M. Ledanski Hyde]*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  November 3, 2022