UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

PT Garuda Indonesia (Persero) Tbk,

    Debtor in a Foreign Proceeding

Chapter 15
Case No. 22-11274 (LGB)

---

### DECLARATION OF JAMASLIN JAMES PURBA IN SUPPORT OF THE GREYLAG ENTITIES' OBJECTION TO MOTION FOR ENFORCEMENT OF INDONESIAN PKPU PLAN

    I, Jamaslin James Purba, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am an attorney licensed, and in good standing, to practice in Indonesia. I am the Managing Partner of James Purba & Partners, a full-service firm based in Indonesia. I submit this declaration (the "**Indonesian Counsel Declaration**") in support of the Greylag Entities' objection to motion for enforcement of the Indonesian PKPU Plan of Garuda Persero.[1]

2. I have been practicing law in Indonesia for more than 29 years. I graduated from the Gadjah Mada University in Yogyakarta, Indonesia with a Bachelor of Law in 1992 and obtained a Master of Law in 2013 from the same university. I have been an insolvency law practitioner for about 24 years and have represented both creditors and debtors. I have also acted as a liquidator and an administrator.

---

[1] I refer to the "**Greylag Entities**" as, collectively, Greylag Goose Leasing 1410 Designated Activity Company and Greylag Goose Leasing 1446 Designated Activity Company. I refer to the above-referenced debtor in this Chapter 15 proceeding as "**Garuda Persero**."

1

3. I am also a lecturer at the Postgraduate Faculty of Law, Gadjah Mada University, Jakarta, Indonesia campus, teaching Business Law (Bankruptcy and PKPU). I have also been a lecturer with the Association of Indonesian Bankruptcy Receiver and Administrators (Asosiasi Kurator dan Pengurus Indonesia / AKPI) since 2014.

4. In addition, I am an Advocate Profession Special Education (Pendidikan Khusus Profesi Advokat (PKPA)) lecturer specifically for Bankruptcy and PKPU at various universities in Indonesia.

5. My full curriculum vitae is attached hereto as <u>Exhibit A</u>.

6. This declaration comprises matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements reflect Indonesian law based on my education and years of experience practicing Indonesian law in Indonesia. Where the matters stated in this declaration are statements of fact they are either: (i) based on my personal knowledge, and are known to me to be true and accurate, of (ii) if not within my personal knowledge, are derived from documents and/or information supplied by the Greylag Entities or their counsel or filed in this Chapter 15 proceeding by the foreign representatives of Garuda Persero or their counsel, and are true to the best of my knowledge, information and belief.

7. The PKPU petition was lodged by PT Mitra Buana Koorporindo (formerly known as PT Mitra Buana Komputindo), one of Garuda Persero's creditors.

8. In the PKPU proceedings, the Composition Plan was prepared and submitted by Garuda Persero ("**Composition Plan**").

9. A composition plan, once approved by the requisite threshold, binds all unsecured creditors, regardless of whether an unsecured creditor has voted for or against the plan.

10. On 27 June 2022, the Jakarta Commercial Court rendered its decision to conclude the PKPU proceeding of Garuda Persero by way of ratifying the Composition Plan to become a Homologation Decision (herein referred to as the "**Homologation Decision**").

11. A homologation decision should be construed as to regulate the repayment mechanisms of all or parts of the debtor's debts to its creditors.

12. However, there are several irregularities regarding the provisions under the Homologation Decision, such as the inclusion of the subsidiaries of Garuda Persero in the Homologation Decision, despite not being declared as a debtor in PKPU during the proceeding.

13. Garuda Persero and its subsidiaries are separate legal entities. Unless the subsidiaries of Garuda Persero are also included in the proceeding and are declared as debtor(s) in PKPU therein, the legal effect of the PKPU proceeding of Garuda Persero shall not bind the subsidiaries of Garuda Persero.

14. In a group company debt restructuring, the holding company and its subsidiaries can (and should) be included as debtors within the same PKPU proceeding (see, for example, the PKPU Application of CV Prima Karya vs PT Sri Rejeki Isman, Tbk,, *et.all*. (2021)).[2]

---

[2] *See* Exhibit B attached hereto, which is a copy of: https://voi.id/en/economy/127975/sritex-owned-by-conglomerate-iwan-lukminto-and-3-of-its-subsidiaries-escaped-the-threat-of-bankruptcy

15. Alternatively, each subsidiary can be put under PKPU proceedings in different petitions submitted within the same timeframe with the PKPU proceeding of its parent company.

16. If subsidiaries of the holding company are not included as debtors in the relevant PKPU proceedings but are nevertheless subject to a PKPU homologation decision, the Judge shall not ratify such provision since it contravenes the basic principle of the Indonesian Civil Law, i.e., that a decision shall only bind the disputing parties and object of the dispute.

17. Even if such a provision is ratified by the Judge, my view is that creditors will not be deemed to have waived their right to contest the ratification since there is no clear provision on this matter under the Bankruptcy Law.

18. In this case at hand, the debtor in the PKPU proceeding was Garuda Persero, and therefore, the Homologation Decision would only compromise and settle the debts of Garuda Persero against the Greylag Entities.

19. I understand that the Greylag Entities may have claims against Garuda Indonesia Holiday France S.A.S ("**GIHF**") pursuant to certain aircraft lease agreements dated 20 October 2016 (the "**Master Lease Agreements**"). I understand also that Garuda Persero is the sub-lessee and the guarantor of GIHF under certain sub-lease agreements dated 20 October 2016 and related SubLease Subordination Agreements dated 27 September 2019 (the "**Sublease Agreements**"), whereas the Master Lease Agreements for the lease of the aircrafts were entered into between GIHF and the Greylag Entities.

20. In addition, I note that the Greylag Entities found out only during the PKPU proceeding of Garuda Persero that Garuda Persero has breached the Sublease Agreements by stripping and transferring, and GIHF has breached the Master Lease Agreements by

4


allowing Garuda Persero to strip and transfer, parts of the Greylag Entities' aircrafts to other aircraft without prior approval from the Greylag Entities. In this regard, the loss incurred due to the above defaults by GIHF and Garuda Persero has yet to be covered in the claims submitted during the PKPU proceeding.

21. As I have explained above, since Garuda Persero and GIHF are two separate legal entities, and GIHF was not declared to be in PKPU by the Commercial Court, the Homologation Decision shall not compromise any debts of GIHF owed to the Greylag Entities.

22. In addition, under Article 254 of the Bankruptcy Law, it is clear that a PKPU or a composition plan is not applicable for the benefit of both debtor and guarantor at the same time (or simultaneously). This provision confirms that the PKPU is only applicable for Garuda Persero as a guarantor and not applicable for GIHF (Lessee).

23. The unofficial English translation of Article 254 of the Bankruptcy Law is as follows:

*"Suspension of the debt payment obligation does not apply to the profits of fellow Debtors and insurers."*

24. This means that the Greylag Entities still have the right to file claims against GIHF on any outstanding amounts that have not been covered by the amount granted under the PKPU pursuant to the Master Lease Agreements, including the compensation for the losses suffered due to the stripping and transfer parts of the aircrafts and any other breach(es) of the Master Lease Agreements.

25. Further, there is no provision under the Bankruptcy Law which indicates that a homologation decision would compromise the rights of creditor(s) to file a claim against the debtor to pursue the performance of their main agreement(s).



26. This is notwithstanding the purported third party releases contained in the Composition Plan, including at Article 6.1(b) of the Composition Plan, in relation to creditors of GIHF.

27. Under the basic principle of Indonesian Civil Law and Article 1917 of the Indonesian Civil Code, a court decision shall only bind the disputing party and the object of the dispute which was raised in such civil proceedings. As such, the third party release clause shall be deemed unenforceable by GIHF.

28. The unofficial English translation of Article 1917 of the Indonesian Civil Code is as follows:

    *"The authority of the legal judgment entered is not extend any further than the subject of the judgment. In order to invoke such authority, it shall be required that the case which has been heard shall be the same; that the claim is based upon the same grounds, and is made by and against the same parties having the same relationship."*

29. Accordingly, and in summary:

    (a) The Greylag Entities' claims against GIHF (which is a third party to the PKPU) may not have been compromised by the PKPU proceedings, by the Composition Plan and/or by the Homologation Decision;

    (b) GIHF's obligations under the Master Lease Agreements may not have been released or discharged by the PKPU proceedings, by the Composition Plan and/or by the Homologation Decision;

    (c) Notwithstanding the PKPU proceedings, the Composition Plan and the Homologation Decision, the Greylag Entities are still entitled to bring legal



6

   actions against GIHF in order to seek compensation for any amount owed by GIHF under the Master Lease Agreements.

30. For completeness, I am of the view that the third-party releases clause in the Composition Plan cannot be severed.

31. The bankruptcy law only recognises an annulment to the entire homologation decision upon a request for annulment from the parties and therefore, cannot be only applied to certain specific clauses of the homologation decision.

32. There are two grounds for the annulment of a homologation decision under the Bankruptcy Law, which are:

 (a) Through a request for annulment of the homologation decision, in the event that the debtor fails to fulfil its obligations under the homologation decision; and

 (b) By way of filling an appeal (*i.e.,* cassation, civil review) to the Supreme Court to request an annulment of the homologation decision.

33. As I have explained above, even where the Judge has ratified such provision of the Composition Plan where subsidiaries of the holding company are not included as debtors in the relevant PKPU proceedings but are nevertheless subject to a PKPU homologation decision, creditors will not be deemed to have waived their right to contest the ratification since there is no clear provision on this matter under the Bankruptcy Law.

34. If a request for annulment of the homologation decision is made and granted by the Court, the Court will also declare the debtor bankrupt. The Commercial Court will then commence the usual bankruptcy proceeding against the debtor.



7

Executed at Jakarta, Indonesia

15 December 2022

_____
Jamaslin James Purba

# CURRICULUM VITAE

**JAMASLIN JAMES PURBA, S.H., M.H.**
Managing Partner of JAMES PURBA & PARTNERS
Advocates & Legal Consultants Law Firm

**Law Firm JAMES PURBA & PARTNERS**

Wisma Nugra Santana, 8th Floor, Suite 807

Jalan Jenderal Sudirman Kav. 7-8

Jakarta 10220 INDONESIA

Telephone     : (62-21) 570 3844

Facsimile     : (62-21) 570 3846

Mobile        : +6281218706955

Email         : jpplawfirm@gmail.com

**EDUCATIONAL BACKGROUND**

1) **Bachelor of Law, (S.H.)**                                                          1992

    Graduated from the Faculty of Law, Gadjah Mada University, Yogyakarta, with Cum Laude predicate

2) **Master of Law, (M.H)**                                                             2013

    Graduated from the Faculty of Law, Gadjah Mada University, Yogyakarta

**PROFESSIONAL EXPERIENCES**

1) Junior lawyer at Law Firm GEORGE WIDJOJO & PARTNERS, Jakarta          1993
2) Associate lawyer at LAW FRIM AMROOS & PARTNERS, JAKARTA               1994-1996
3) Senior associate lawyer at MAKARIM & TAIRA S. Law Firm, Jakarta       1996-1999
4) Senior Litigation Lawyer at HOTMAN PARIS & PARTNERS Jakarta Law Firm  1999-2002
5) Established Law Firm JAMES PURBA & PARTNERS                           2002-now

**PROFESSIONAL QUALIFICATIONS**

| | | |
|---|---|---|
| 1) | PERADI Advocate License | 1995 |
| 2) | Association of Indonesian Bankruptcy Receiver and Administrators (Asosiasi Kurator dan Pengurus Indonesia/ AKPI) | 2010 |

**ACADEMIC ACTIVITIES**

1) Lecturer in Business Law Seminar (Bankruptcy and PKPU) at the Postgraduate Faculty of Law, Gadjah Mada University, Jakarta Campus;

2) Advocate Profession Special Education (**Pendidikan Khusus Profesi Advokat** (**PKPA**)) lecturer specifically for Bankruptcy and PKPU at various universities, including: Trisakti University, Tarumanegara University, Indonesian Christian University, Padjadjaran University, North Sumatra University, Atmajaya University Yogyakarta, Bhayangkara University, Bung Karno University, As Islamic University -Syafiiyah, PKPA BARESKRIM POLRI- PERADI, PKPA PERADI-PERTAMINA, PKPA PERADI Military College, PKPA PERSDI-DEPKEU RI, Maranatha Christian University, Bandung , Indonesian Christian University, Kartini University Surabaya, Janabadra University Yogyakarta, Mataram Muhammadiyah University, Pamulang University , Semarang State University, Batam International University, IAIN KENDARI, Pamulang University;

3) Lecturer in Association of Indonesian Bankruptcy Receiver and Administrators (Asosiasi Kurator dan Pengurus Indonesia/ AKPI) since 2014 and has been an expert witness at the Commercial Court;

4) Speaker at various seminars, workshops and special training on Bankruptcy Law at various institutions including: Bank Indonesia, Financial Services Authority (OJK), Bank Mandiri, Bank BCA, Menkopolhukam, BPJS Ketenagakerjaan, Bank Negara Indonesia (BNI), Bank Rakyat Indonesia ( BRI), Mega Bank, Mandiri Syariah Bank, State Savings Bank (BTN), Yogyakarta Regional Development Bank, Parahiyangan University, Sriwijaya University, Malang Muhammadiyah University, Gadjah Mada University, Directorate General of State Assets, Ministry of Finance of the Republic of Indonesia.

**ORGANIZATIONAL EXPERIENCES**

| | | |
|---|---|---|
| 1) | Chairman of the Representative Council of the Central Jakarta branch of the Indonesian Advocates Association (AAI). | 2010-2013 |
| 2) | AAI Central Executive Board. | 2010-2015 |
| 3) | Chairman of the Representative Council of the Central Jakarta branch of the PERADI, CENTRAL JAKARTA. | 2013-2018 |
| 4) | PERADI's National Leadership Council (DPN) management | 2010-2015 |

| | | |
|---|---|---|
| 5) | Deputy Chairman of the PERADI National Leadership Council (DPN). | 2015-2020 |
| 6) | Chairman of the Association of Indonesian Curators and Administrators (AKPI) | 2013-2019 |
| 7) | General Secretary of the UGM Faculty of Law Alumni Family (KAHGAMA) | 2018-2023 |
| 8) | Chairman of the Advisory Board of AKPI | 2019-2022 |
| 9) | Chairman of PERADI Football Club (PERADI FC) | 2016-now |

Home  >  Ekonomi

# Sritex Owned By Conglomerate Iwan Lukminto And 3 Of Its Subsidiaries Escaped The Threat Of Bankruptcy

26 Jan 2022 09:09 | Editorial Team



*Illustration. (Photo: Doc. Sritex)*

Share:

JAKARTA - The textile company, PT Sri Rejeki Isman Tbk (SRIL) alias Sritex and its three subsidiaries finally escaped the threat of bankruptcy. This follows the approval of the majority of creditors, Sritex's Suspension of Debt Payment Obligations (PKPU) ended with the ratification of the peace plan proposed by Stritex.

As is known, Sritex and its three subsidiaries have been in a state of PKPU since May 6 with the approval of the PKPU application submitted by CV Prima Karya. The three subsidiaries are PT Sinar Pantja Djaja, PT Bitratex Industries, and PT Primayudha Mandirijaya.

Selengkapnya

Replay

Alfin Sulaiman, member of the Sritex PKPU Management Team, said that the Deliberative Meeting of the Panel of Judges held at the Commercial Court at the Semarang District Court on Tuesday, January 25 decided to ratify the peace plan for Sritex and its subsidiaries.

In an information disclosure on the Indonesia Stock Exchange (IDX), quoted Wednesday, January 26, Sritex Corporate Secretary Welly Salam said, with the homologation of the peace plan, Sritex and its subsidiaries are no longer in a state of Debt Payment Obligation (PKPU).

As is known, the majority of creditors have given their approval to the peace plan proposal submitted by Sritex in the creditors' meeting with a voting agenda, aka voting, which was held last Friday, January 21.

Based on data from the Sritex PKPU Management Team, 100 percent of the total number of separatist creditors who were present representing all claims of separatist creditors who were present voted in agreement. Meanwhile, 75 percent of the number of concurrent creditors who were present, representing 67.39 percent of the concurrent creditors who attended also voted in favor.

Thus, the vote on the Sritex peace plan has filled the quorum. According to Alfin, as a labor-intensive company that supports the lives of the majority of the people of Solo and Sukoharjo, Sritex should be released from the threat of bankruptcy and continue its business.

Sritex President Director Iwan Setiawan Lukminto expressed his appreciation for the achievement of peace, especially to creditors who are willing to cooperate in the success of the company's restructuring. According to Iwan, creditor support is very important for the peace process and corporate restructuring.



"We believe that good relations and full support from creditors can be the basis for the company to be even better," said Iwan in an official statement.

Sritex's success in achieving peace with its creditors is a reflection of the creditors' trust in Sritex and the business continuity and future of the company. Sritex respects the attitude of concurrent creditors who reject the peace proposal.

Understandably, the number of votes in favor of the concurrent creditors barely reached the quorum. As is known, based on the Bankruptcy Law and PKPU, the peace plan can be accepted based on the approval of more than half the number of creditors, both concurrent and separatist, who are present and represent at least 2/3 of the or all claims of creditors, both concurrent and separatist who are present.

Based on the homologated peace plan, Sritex in its proposal proposes to cancel any and all interest, fines and other fees recorded in relation to its debts on the homologation date.



The principal debt that has matured and is payable based on the original financial documents on the date of the PKPU decision that Sritex will settle is IDR 19.96 trillion.

The principal amount of the debt consists of bilateral facilities of IDR 5.87 trillion and 178.96 million and 7.5 million euros, syndicated facilities of 350.03 million US dollars, bonds payable of 375 million US dollars, medium term notes (MTN) debt of USD 25 million, and leasing facilities of IDR 289.5 billion and USD 1 million.

BACA JUGA:



| EKONOMI
Saham Sritex, Perusahaan Tekstil Milik Konglomerat Iwan Lukminto Ini Sedang 'Diparkir' Bursa, Kenapa?

| EKONOMI
Sritex Milik Konglomerat Iwan Lukminto Terancam Ditendang dari BEI, Dirut: Kami Sedang Fokus Selesaikan Proses PKPU

Sritex will settle all bilateral and syndicated debts through the allocation of Secured Working Capital Revolver, Secured Term Loan, and Unsecured Term Loan or Mandatory Convertible Loan.

Sritex will restructure the principal outstanding from bilateral debt and syndicated debt worth USD 267.2 million into Secured Working Capital Revolver. This facility has a term of five years from the effective date.

Meanwhile, the principal bilateral debt and syndicated debt worth USD 340.1 million will be restructured into a Secured Term Loan facility. The term is nine years.

Then, Sritex will restructure the principal of bilateral debt and syndicated debt worth USD 344 million into Unsecured Term Loan facilities. The term of this facility is 12 years after the effective date.



Immediately after the effective date, Sritex will invite bilateral and syndicated debt holders to choose to receive an Unsecured Term Loan or Mandatory Convertible Loan. Debt holders who do not want to receive an Unsecured Term Loan can choose a Mandatory Convertible Loan.

The Mandatory Convertible Loan has a term of five years from the effective date. The debt conversion of SRIL shares can be started from the third year. At maturity, any and all of the outstanding principal of the Mandatory Convertible Loan will be converted into SRIL shares.

*The English, Chinese, Japanese, Arabic, French, and Spanish versions are automatically generated by the system. So there may still be inaccuracies in translating, please always see Indonesian as our main language. (system supported by DigitalSiber.id)*

Tag:   ekonomi    pasar saham    bisnis    orang terkaya di indonesia    konglomerat    market    hukum